[No. S022502. Dec. 21, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
NABIL KARAMAN, Defendant and Respondent.

338

COUNSEL

Edwin L. Miller, Jr., District Attorney, Paul M. Morley, Thomas McArdle and Edward J. Mantyla, Deputy District Attorneys, for Plaintiff and Appellant.

John A. Crawford, Jr., for Defendant and Respondent.

OPINION

GEORGE, J.—In this case we must decide whether a trial court loses jurisdiction over a defendant, and the power to modify the defendant's

sentence in a manner more favorable to the defendant, where the court has imposed a state prison sentence, has ordered a brief stay of execution of judgment in order to permit the defendant to put his or her personal affairs in order prior to commencement of execution of the sentence, and the clerk of the court has entered that sentence in the minutes of the court.

The district attorney contends the trial court loses jurisdiction to modify the defendant's sentence when the clerk enters the sentence in the minutes. Defendant contends the trial court retains jurisdiction to modify the sentence until the execution of the sentence has commenced. As we shall explain, we conclude that, under these circumstances, the trial court retains jurisdiction to modify the defendant's sentence by imposing a lesser sentence at any time prior to commencement of execution of the sentence. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter to that court with directions to reinstate the judgment incorporating the modified sentence imposed by the trial court on June 15, 1990.

I

At the time of sentencing, the trial court had before it the following information.[1] Defendant, then 54 years of age, is a naturalized citizen of the United States who emigrated from Israel in 1965. He worked at various jobs for a number of years in this country and, with declining success, owned and operated a series of businesses commencing in 1981 with a pet store, a camper-shell manufacturing business in 1987, and a landscaping and maintenance business in 1988. In March 1989, defendant was convicted in federal court of a misdemeanor count of transporting illegal aliens and was placed on summary probation.

Concerned about meeting the payroll in his most recent business venture, defendant, on December 7, 1989 (the day before the payroll was due), robbed an Alpha Beta grocery store. Defendant effected the robbery by approaching the store manager (who was exiting from the store office), revealing a handgun tucked inside his waistband, grabbing the manager's hand, and directing her back inside the store office. When another employee looked inside the door of the office, defendant revealed the handgun to him as well. The weapon was not loaded, and defendant did not remove it from his waistband during the course of the robbery. The store manager retrieved cash (the exact amount is uncertain but was not more than $950) from the

---

[1]Defendant was convicted upon his plea of guilty. The information before the trial court relative to sentencing came from the report of the probation officer, a psychiatric evaluation, a written statement in mitigation offered by defendant, and statements provided by defendant's friends and relatives. This information is not contested on appeal by the district attorney.

safe and handed it to defendant, who pulled the telephone in the store office from the wall before leaving the premises.

Upon exiting from the grocery store with the cash he had taken, defendant was unable to locate his automobile, even though the name of defendant's business was printed on the side of the vehicle, which was parked in front of the grocery store. Walking in the opposite direction, defendant moments later was apprehended by the police. After the store manager identified him at a curbside lineup and departed, defendant inquired whether that person was the store manager and, upon receiving an affirmative response, told the police to tell her he apologized for committing the robbery.

On December 19, 1989, an information was filed charging defendant with a single count of robbery. (Pen. Code, § 211.)[2] ▮▮▮▮ Subsequent to defendant's arraignment and entry of a not guilty plea on January 2, 1990, the prosecutor amended the information to include a sentence enhancement for personal use of a firearm. (§ 12022.5, subd. (a).)[3] During the preliminary hearing held on February 22, 1990, the store manager testified that defendant had grabbed her hand (from which a cast had been removed the previous day). Thereafter, the prosecutor filed a second amended information adding an allegation that defendant personally had inflicted great bodily injury. (§ 12022.7.) On March 1, 1990, defendant entered a plea of not guilty to the information as amended, also denying the firearm-use and great-bodily-injury allegations.

On April 27, 1990, the prosecution and the defense agreed that defendant would plead guilty to the charge of robbery and admit the allegation of personal use of a firearm, and that the prosecutor would stipulate to imposition of the low term of two years in state prison on the robbery charge and would dismiss the allegation of great bodily injury. On that date, the trial court granted defendant's motion to withdraw his plea of not guilty, and defendant entered a plea of guilty to the charge of robbery, also admitting the allegation of personal use of a firearm. The trial court also granted the prosecutor's motion to dismiss the allegation of great bodily injury.

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] The amended information does not include an allegation that defendant is ineligible for probation pursuant to section 1203.06, subdivision (a)(1)(ii), by reason of his personal use of a firearm during the commission of the robbery. Subdivision (b)(1) of section 1203.06 requires only that the accusatory pleading allege "any fact" rendering the defendant ineligible for probation pursuant to subdivision (a), however, and does not require a reference to section 1203.06 itself. The personal-use allegation under section 12022.5 therefore was sufficient to invoke section 1203.06. (*People* v. *McKissick* (1984) 151 Cal.App.3d 439, 442-445 [199 Cal.Rptr. 95]; see *People* v. *Superior Court* (*Frietag*) (1988) 204 Cal.App.3d 247, 250 [250 Cal.Rptr. 912].)

Subsequently, the probation officer assigned to defendant's case prepared a report indicating that pursuant to section 1203.06, subdivision (a)(1)(ii), defendant was ineligible for probation, and recommending that defendant be sentenced to state prison for two years on the robbery charge plus two additional years (as that statute then provided) on the section 12022.5, subdivision (a), enhancement for personal use of a firearm. The probation officer's report offered the comment that, had defendant been eligible, he would be an ideal candidate for probation, because he appeared to be remorseful and the offense appeared to be an aberration and out of character. The probation officer recommended, therefore, that defendant be given the shortest possible term of imprisonment.

In his written statement in mitigation filed with the court, defendant acknowledged our decision in *People* v. *Tanner* (1979) 24 Cal.3d 514, 519 [156 Cal.Rptr. 450, 596 P.2d 328], holding that "when proper findings invoking the operation of section 1203.06 have been made, the mandatory provisions of that section may not be avoided by employing section 1385 to strike either the allegations of the complaint or the findings of the jury" and thus grant probation. Defendant urged the trial court, nevertheless, to "find a way" to grant probation, or, in the alternative, to employ its discretion pursuant to California Rules of Court, former rule 445, and strike the additional term of imprisonment provided as an enhancement by section 12022.5.

On June 8, 1990, at the probation and sentencing hearing, defense counsel expanded upon his request that the trial court grant probation despite the limitation of section 1203.06. The court, noting defense counsel's invitation "to utilize [section] 1385 in order to go against the dictates of [section] 1203.06," stated: "I do not see [section] 1385 allowing the court to take that approach. If I felt that it did allow that based upon these facts, there is no doubt in my mind that I, in fact, would make this a probationary grant as opposed to a state prison commitment." Also expressly rejecting defense counsel's alternative request to employ its discretion and strike the additional term of imprisonment provided for the personal use of a firearm, the court sentenced defendant to state prison for the low term of two years on the robbery charge, plus two years for personal use of a firearm, to be served consecutively. The court then ordered that execution of the sentence be stayed for one week in order that defendant might assist his family in moving to a new residence. On that same date (the day of the probation and sentencing hearing), the clerk recorded the terms of the sentence and the one-week stay order in the minutes of the court.

On June 15, 1990, at the conclusion of the one-week period in which execution of the sentence was stayed, the trial court, initially on its own

motion (in which defendant subsequently joined), held a further hearing. The court observed that at the hearing held on June 8, the court had focused on the issue whether the firearm-use allegation precluded a grant of probation, and, having determined that to be the case, also had concluded the Legislature contemplated a separate, consecutive sentence for the personal firearm-use enhancement. Noting its discretion, pursuant to section 1170.1, subdivision (h), to strike the additional punishment provided by section 12022.5[4] and explaining that perhaps it had not exercised its "entire discretion" at the earlier hearing, the court announced its intent to modify the sentence. The court, over the district attorney's objection that it lacked jurisdiction, ordered that its prior sentence be modified to reflect that the additional punishment provided by section 12022.5, subdivision (a), for personal use of a firearm was stricken, and also ordered that in all other respects the sentence remain the same. The clerk on that date entered the terms of the trial court's oral pronouncements in the minutes, and defendant was remanded to commence serving the two-year term. On June 19, 1990, an abstract of judgment was prepared reflecting the sentence as rendered on June 15, 1990.

The district attorney appealed,[5] contending the trial court had (1) no authority to order a stay of execution of the sentence pronounced on June 8, 1990, (2) no valid ground to modify on June 15, 1990, the sentence it had pronounced on June 8, 1990, and (3) no jurisdiction to modify the sentence on June 15, 1990.[6]

On appeal, the Court of Appeal concluded that the trial court had relinquished jurisdiction over defendant on June 8, 1990, upon entry of the judgment in the minutes of the court, and therefore had no authority to

---

[4]At the time defendant committed the robbery in 1989, section 1170.1, subdivision (h), provided in pertinent part: "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in Sections . . . 12022.5, . . . if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (Stats. 1988, ch. 1487, § 2, pp. 5272-5274.) Effective January 1, 1990, the Legislature modified section 1170.1, subdivision (h), to delete section 12022.5 enhancements from the list of enhancements as to which the court has discretion (under § 1170.1, subd. (h)) to strike the additional punishment provided. (Stats. 1989, ch. 1044, No. 5 Deering's Adv. Legis. Service, pp. 3627-3628.)

[5]California Rules of Court, rule 31(a), provides that a written notice of appeal is to be filed within 60 days after the rendition of the judgment or the making of the order from which the appeal is taken. The district attorney's notice of appeal was filed on August 10, 1990—as defendant points out, 62 days after the sentence pronounced and recorded in the clerk's minutes on June 8, 1990, and 55 days after the sentence pronounced and recorded on June 15, 1990. Nonetheless, the validity of the June 8, 1990, order still may be considered on this appeal, because the sentence imposed on June 15, 1990, necessarily encompasses the action taken by the court on June 8, 1990.

[6]The district attorney does not contend that the trial court violated the terms of any plea bargain agreement by modifying the sentence.

modify the sentence on June 15, 1990.[7] ▮▮ ▮▮▮ ▬▬ Accordingly, the Court of Appeal reversed the trial court's judgment dated June 15, 1990, and directed the lower court to correct its minutes to reflect imposition of the four-year sentence pronounced on June 8, 1990.[8]

Defendant then filed a petition for review, contending that the trial court had retained jurisdiction over defendant during the one-week period in which the execution of the sentence of June 8, 1990, was stayed, and that the

---

[7]The Court of Appeal also declined defendant's request that, on authority of our decision in *People* v. *Tanner, supra,* 24 Cal.3d 514, 521-522, and because defendant already had served in full the two-year term imposed on June 15, 1990, it excuse him from serving the remainder of the four-year term imposed on June 8, 1990.

[8]As described above, the district attorney also contended in the Court of Appeal that the trial court lacked authority to grant a one-week stay on June 8, 1990, and had no valid basis to modify the judgment on June 15, 1990. The Court of Appeal did not reach these issues, expressly deciding the appeal only on the ground that the trial court lost jurisdiction to modify the sentence upon entry of the judgment in the minutes on June 8, 1990.

These additional contentions are without merit. The district attorney's assertion that the trial court was not authorized to grant a one-week stay relies upon the language of section 1203.06, subdivision (a)(1)(ii), providing that "[p]robation shall not be granted to, nor shall the execution or imposition of sentence be suspended for . . . [¶] . . . [a]ny person who personally used a firearm during the commission of . . . [¶] . . . [r]obbery . . . ." The district attorney notes that in interpreting this statute, the court in *People* v. *Bradley* (1981) 115 Cal.App.3d 744, 753-754 [171 Cal.Rptr. 487] (disapproved on another ground in *People* v. *McDonald* (1984) 37 Cal.3d 351, 371, fn. 18 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011]), stated: ". . . [T]he Legislature intended a trial court to be without the discretion to stay execution of a sentence for an offense enumerated in section 1203.06 . . . ." This statement actually is part of that court's conclusion that when a defendant has been convicted of both robbery and kidnapping for the purpose of robbery, and personally has used a firearm during the commission of the kidnapping offense, section 1203.06 deprives a court of its general authority pursuant to section 654 to stay the kidnapping-for-robbery sentence pending completion by the defendant of the sentence for the lesser offense of robbery. (115 Cal.App.3d 744, 753-754; compare, *People* v. *Superior Court (Himmelsbach)* (1986) 186 Cal.App.3d 524, 536-539 [230 Cal.Rptr. 890].) Neither the *Bradley* case nor the others cited by the district attorney on this point provide authority for the proposition that a court may not grant a one-week stay of commitment where no reduction of the actual term of commitment is contemplated. (Compare *People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1019 [232 Cal.Rptr. 132, 728 P.2d 202]; *People* v. *Tanner, supra,* 24 Cal.3d 514, 521; *People* v. *Barela* (1983) 145 Cal.App.3d 152, 160-161 [193 Cal.Rptr. 257] [holding that because a court is permitted to stay the lesser of two offenses when both come within the provisions of § 1203.06, subd. (a)(1), the trial court properly stayed the sentence for attempted murder with firearm use and ordered that the sentence for robbery with firearm use be served; contra, *People* v. *Superior Court (Himmelsbach), supra,* 186 Cal.App.3d 524, 536-539].)

The district attorney's assertion that the trial court had no valid basis to modify the sentence overlooks the circumstances of the June 15 sentencing proceedings, in which the trial court observed that it had not previously focused on its discretion to strike the additional punishment pursuant to section 1170.1, subdivision (h) (as the statute read at that time), and then properly exercised that discretion based upon ample evidence of circumstances in mitigation. (See also fn. 4, *ante,* p. 342.)

Court of Appeal's decision placed an improper limitation on the scope of the trial court's authority with respect to sentencing. We granted review.

## II

■ Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced. (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 455 [279 Cal.Rptr. 834, 807 P.2d 1063]; *Holder* v. *Superior Court* (1970) 1 Cal.3d 779, 783 [83 Cal.Rptr. 353, 463 P.2d 705]; 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Judgment and Attack in Trial Court, § 3131, p. 3865.) Where the trial court relinquishes custody of a defendant, it also loses jurisdiction over that defendant. (*In re Black* (1967) 66 Cal.2d 881, 890 [59 Cal.Rptr. 429, 428 P.2d 293].) If, however, the trial court "retains in itself the actual or constructive custody of the defendant and the execution of his sentence has not begun," the court may vacate and modify the sentence. (*Id.* at p. 888; *People* v. *Heinold* (1971) 16 Cal.App.3d 958, 963 [94 Cal.Rptr. 538].)

■ In a criminal case, the execution of a judgment of conviction is the process of carrying the judgment into effect. (*In re Black, supra,* 66 Cal.2d 881, 889.)[9] The manner of executing a judgment sentencing a defendant to imprisonment is prescribed by the Penal Code. When a judgment other than death has been pronounced, and the judgment is for incarceration in a state prison, either a certified copy of the minute order or a certified abstract of the judgment "shall be forthwith furnished to the officer whose duty it is to execute the . . . judgment, and no other warrant or authority is necessary to justify or require its execution"; the certified abstract or minute order constitutes the commitment. (§ 1213; see *In re Black, supra,* 66 Cal.2d at p. 890; *People* v. *Heinold, supra,* 16 Cal.App.3d 958, 963.)[10] The commitment document is the order remanding the defendant to prison and is " 'the process and authority for carrying the judgment and sentence into effect.' [Citations]." (*In re Black, supra,* 66 Cal.2d at p. 890; *People* v. *Heinold, supra,* 16 Cal.App.3d at p. 963; see *People* v. *Mesa, supra,* 14 Cal.3d 466, 471 [stating that the abstract of judgment is not the judgment].)

---

[9]In a criminal case, judgment is rendered when the trial court orally pronounces sentence. (§§ 1191 and 1202; *People* v. *Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; *People* v. *Thomas* (1959) 52 Cal.2d 521, 529, fn. 3 [342 P.2d 889]; 6 Witkin & Epstein, Cal. Criminal Law, *supra,* § 3101, p. 3825.) A judgment in a criminal case may consist of a fine, a term of imprisonment, or both (§ 1445), and the judgment may be imposed or, in appropriate cases, suspended. (§ 1203.)

[10]Where a certified copy of the minute order is employed as the commitment document, the form and content of its first page must be identical to that prescribed for an abstract of judgment. (§§ 1213, 1213.5.)

If the judgment is for imprisonment, "the defendant must forthwith be committed to the custody of the proper officer and by him or her detained until the judgment is complied with." (§ 1215.) The sheriff, upon receipt of the certified abstract of judgment "or minute order thereof," is required to deliver the defendant to the warden of the state prison together with the certified abstract of judgment or minute order. (§ 1216.) "It is clear then that at least upon the receipt of the abstract of the judgment by the sheriff, the execution of the judgment is in progress." (*In re Black, supra,* 66 Cal.2d at p. 890; *People* v. *Heinold, supra,* 16 Cal.App.3d 958, 963; 6 Witkin & Epstein, Cal. Criminal Law, *supra,* § 3115, p. 3844.)

Thus, for example, in *People* v. *Banks* (1959) 53 Cal.2d 370 [1 Cal.Rptr. 669, 348 P.2d 102], we considered the effect of a stay of execution in the context of the trial court's authority to grant probation for certain offenses. We observed that upon entry of a guilty plea, if the trial court chooses to retain jurisdiction under the statutes dealing with probation, it may pronounce judgment and suspend its execution by refraining from issuing a commitment of the defendant to the prison authority. We stated: "The critical requirement for control over the defendant and the res of the action is that the court shall not have surrendered its jurisdiction in the premises *by committing and delivering the defendant to the prison authority.*" (*Id.* at p. 384, italics added.)

### III

 ▬ ██ ██ The question that arises in the present case is whether the trial court loses jurisdiction over a defendant (and thus the authority to modify his or her sentence), even prior to the time the defendant is delivered into the custody of the prison authorities, upon entry of the judgment in the minutes of the court.[11]

The district attorney and the Court of Appeal relied upon several of our decisions, described hereafter, for the proposition that the trial court's

---

[11]Section 1207 provides: "When judgment upon a conviction is rendered, the clerk, or if there is no clerk, the judge, must enter the same in the minutes, stating briefly the offense for which the conviction was had, and the fact of a prior conviction, if any. A copy of the judgment of conviction shall be filed with the papers in the case." The entry of the judgment in the minutes of the court must be performed within a reasonable time. The usual practice is that the clerk of the court makes up the minutes following adjournment of the court for the day. (*People* v. *McAllister* (1940) 15 Cal.2d 519, 527 [102 P.2d 1072], disapproved on another ground in *People* v. *Thomas, supra,* 52 Cal.2d 521, 533-534.) Entry of the judgment in the minutes of the court is a clerical function. (*People* v. *Mesa, supra,* 14 Cal.3d 466, 471.)

No issue arises in this case as to whether the trial court's modification constituted the use of its inherent power to correct clerical error or instead was an attempt to correct judicial error. (See *In re Daoud* (1976) 16 Cal.3d 879, 882 [129 Cal.Rptr. 673, 549 P.2d 145]; *In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729]; *People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627].) It is clear that both the initial judgment

jurisdiction terminates *either* at the point the judgment is entered in the minutes of the court *or* at the time a defendant begins to serve his or her sentence, essentially whichever occurs first, so that, in the present case, despite the circumstance that execution of the sentence had been stayed for one week and defendant had not yet been delivered into the custody of the prison authorities, entry of the judgment in the court's minutes deprived the court of authority to modify the sentence. We now examine those decisions to determine whether they have application to the present case.[12]

In *People* v. *McAllister, supra,* 15 Cal.2d 519 (*McAllister*), the defendant was convicted of a conspiracy to violate a misdemeanor statute forbidding the sale or advertisement of a perpetual-care cemetery plot prior to the establishment of a perpetual-care fund. At the morning court session, the defendant was sentenced to pay a fine in monthly installments, which were to commence approximately three months after the date of sentencing, but the defendant was not sentenced to any term of incarceration. Prior to entry of the sentence in the minutes of the court, the defendant was recalled, and at the afternoon court session the same day, the judge further ordered that in the event of a default in payment of the fine, the defendant was to serve one day in county jail for each $5 of the unpaid fine, up to a maximum of six months in jail. (*Id.* at pp. 520-521.)

In *McAllister,* we surveyed a number of prior cases in order to determine whether the trial court retained jurisdiction to increase in this manner the sentence imposed upon the defendant McAllister. We observed that in *In re*

---

rendered by the court and the subsequent modification were the result of the exercise of judicial discretion, and that any error the court sought to remedy thus was judicial rather than clerical in nature. (*In re Wimbs* (1966) 65 Cal.2d 490, 498 [55 Cal.Rptr. 222, 421 P.2d 70]; *People* v. *Hartsell, supra,* 34 Cal.App.3d 8, 13-14.) Judicial error (as well as an exercise of judicial discretion) in rendering judgment cannot be corrected by the trial court once jurisdiction has expired, unless the judgment is *void* on the face of the record. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13]; *People* v. *Serrato* (1973) 9 Cal.3d 753, 762-764 [109 Cal.Rptr. 65, 512 P.2d 289] (overruled on another ground in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]); *People* v. *Jackson* (1987) 192 Cal.App.3d 209, 220-221 [237 Cal.Rptr. 373]; *People* v. *Price* (1986) 184 Cal.App.3d 1405, 1408-1409 [229 Cal.Rptr. 550]; *Wilson* v. *Superior Court* (1980) 108 Cal.App.3d 816, 818-819 [166 Cal.Rptr. 795]; *People* v. *Blume* (1960) 183 Cal.App.2d 474, 477-478 [7 Cal.Rptr. 16]; Annot., Power of Court to Increase Severity of Unlawful Sentence —Modern Status (1984) 28 A.L.R.4th 147-174, and later cases (1992 pocket supp.) pp. 16-21; 6 Witkin & Epstein, Cal. Criminal Law, *supra,* § 3130, p. 3864.) It also is clear in the present case that the initial judgment was *not void* on the face of the record.

[12]The Court of Appeal cited several cases dealing, in the context of motions for new trial, with the effect of minute entries upon the court's continued jurisdiction. Because, by statute, such motions must be made and determined "before judgment" (§ 1182), these cases are not persuasive on the issue whether a trial court may modify a judgment already entered in the minutes.

*Garrity* (1929) 97 Cal.App. 372, 375 [275 P.2d 480], the Court of Appeal held ineffective a resentencing (to a fine plus jail time) attempted five weeks after a sentence imposing a fine only, on the basis that the trial court should have exercised its discretionary authority to impose alternative jail time (in the event of nonpayment of the fine) at the time judgment originally was rendered. In *McAllister*, we noted that the result in *In re Garrity* was correct—but for the reason that presumably the original sentence already had been entered in the minutes of the court by the time of the attempted modification, and thus the court had lost jurisdiction to increase or otherwise modify the sentence. (*McAllister, supra,* 15 Cal.2d 519, 523-524.) We then observed that in view of the type of sentence originally imposed upon the defendant McAllister, he (like the defendant in *Garrity*) was not and could not have been placed under restraint by reason of his sentence. (15 Cal.2d at p. 524.)

In *McAllister*, we proceeded to describe various decisions establishing that the trial court has no jurisdiction to modify a sentence or to resentence once the defendant has been taken into custody pursuant to the original judgment. (15 Cal.2d at pp. 525-526.) We also described a case (*Ex parte Monckros Von Vetsera* (1907) 7 Cal.App. 136 [93 P. 1036]) holding that the trial court had authority to modify an order discharging the defendant from custody (made in a habeas corpus proceeding after the defendant had commenced serving his sentence and while he remained in custody), because the order of discharge had not yet been entered in the minutes of the court. (*McAllister, supra,* 15 Cal.2d at p. 524-525.)

In *McAllister*, on the basis of these prior decisions, we stated our belief that the following rule had been established: "If the sentence has been entered in the minutes of the court, or if the defendant has begun serving said sentence or has been restrained by the sentence imposed, then the court is without jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced. On the other hand, if the sentence pronounced has not been entered by the clerk in his minutes, and no legal restraint has been imposed upon the defendant by reason of said sentence, then it is proper for the court to change the sentence originally pronounced." (*McAllister, supra,* 15 Cal.2d at pp. 526-527.)[13]

[13]The portion of the rule described in *McAllister* that refers to entry of a criminal judgment in the minutes of the court is similar to the rule applicable to civil judgments, which are not "effectual" for any purpose until entered in the minutes (Code Civ. Proc., § 664); the trial court, at any time prior to entry of judgment in the minutes of the court, may render a civil judgment different from that first announced. (*Phillips* v. *Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926].)

Subsequent appellate decisions often have recited or relied upon the statement in *McAllister* concerning prior entry of the judgment in the minutes, even where the trial court may have lost jurisdiction simply because the defendant already had commenced serving a sentence involving a term of incarceration. (E.g., *People* v. *Getty* (1975) 50 Cal.App.3d 101, 107-108 [123 Cal.Rptr. 704]; *People* v. *Hartsell, supra,* 34 Cal.App.3d 8, 12-15 [trial court could not effectively resentence by adding prior convictions to abstract of judgment, after the judgment was pronounced orally and was entered in the minutes and defendant already had been restrained by the sentence].)

In *People* v. *Thomas, supra,* 52 Cal.2d 521, we had occasion to review the elements of the *McAllister* rule in the circumstance where, during the morning court session, the trial court orally pronounced sentence to a term of incarceration in county jail but, in the afternoon session (before the sentence had been entered in the minutes of the court *and* before the defendant had commenced serving the sentence), the court discovered it had overlooked a prior conviction and resentenced the defendant to a greater term in state prison. In that case we held the trial court retained jurisdiction to resentence the defendant. (52 Cal.2d 521, 525, 536.)

We observed in *People* v. *Thomas, supra,* 52 Cal.2d 521, that the "clause" of the *McAllister* rule prohibiting alteration of the sentence after entry in the minutes of the court is an adaptation to our courts of the common law rule that the trial court may change its judgment only during the term in which the judgment was rendered, but not thereafter.[14] (*Id.* at p. 530; see *Bronson* v. *Schulten* (1881) 104 U.S. (14 Otto) 410, 415 [26 L.Ed. 797]; *Bell* v. *Thompson* (1862) 19 Cal. 706, 708-709; *Shaw* v. *McGregor* (1857) 8 Cal. 521.) This rule was established in order to provide litigants with some finality to legal proceedings. (*Carpentier* v. *Hart* (1855) 5 Cal. 406, 407.) Ordinarily a term of court would embrace a period of several months, and thus the period between pronouncement of a judgment and its formal entry would be lengthier than the period in modern times between pronouncement of a judgment and its recordation in the minutes. (See e.g., *Bronson* v. *Schulten, supra,* 104 U.S. 410, 415 [26 L.Ed. 797, 799]; *Bell* v. *Thompson, supra,* 19 Cal. 707, 708-709; *Robb* v. *Robb* (1856) 6 Cal. 21, 22.)

We also explained in *People* v. *Thomas* that the second "clause" of the rule in *McAllister* represents the accepted rule that, once execution of a *valid* sentence has commenced, the trial court may not change

---

[14]Terms of court were embodied in the initial California Constitution (Cal. Const. of 1849, art. VI, § 10) but were abolished in this state in 1879. (Cal. Const. of 1879, art. VI, § 5; *In re Gannon* (1886) 69 Cal. 541, 544 [11 P. 240].)

it to *increase* the sentence, even though the original sentence did not reflect the intent of the trial judge and "even though it had not been finally made of record at the time of the attempted change." (*People* v. *Thomas, supra,* 52 Cal.2d 521, 531.)[15] We observed in that case that such alteration is forbidden, " 'not . . . upon the ground that the court has lost control of the judgment . . . , but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." ' [Citations.]" (*Ibid.*; see *Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056] [subsequently applying to the states, through the Fourteenth Amendment to the United States Constitution, the double jeopardy prohibition of the Fifth Amendment]; Cal. Const., art. I, § 15; *People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1047-1048 [216 Cal.Rptr. 865].)

In considering the applicability of this component of the *McAllister* rule in *People* v. *Thomas, supra,* 52 Cal.2d 521, we recognized that execution of the defendant Thomas's sentence had not yet commenced because, even though a deputy sheriff had transported the defendant to the county jail following oral pronouncement of sentence, the defendant was ordered returned to court (and left the jail for return to court) prior to the time a remanding order prescribing county jail time was received by the sheriff's booking office at the jail. Therefore, although the sheriff had custody of the defendant at the time the defendant was ordered returned to court, this was in the sheriff's capacity as a ministerial officer of the court, rather than in his capacity as an executive officer who executes a jail sentence. (*Id.* at pp. 531-533.)

In *People* v. *Thomas, supra,* 52 Cal.2d 521, we also discussed the "clause" of the *McAllister* rule permitting alteration of the judgment where a defendant has not yet been restrained by the sentence, observing that, because the defendant McAllister originally was sentenced only to pay a fine, this clause was dictum. (*Id.* at pp. 533-534.) We proceeded to disapprove *McAllister, supra,* 15 Cal.2d 519, and subsequent cases to the extent they had invoked this dictum to imply that a trial court loses jurisdiction to correct a sentence for a mistake of fact or law after *orally* pronouncing sentence, and that a trial

---

[15]By contrast, where the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or "unlawful" and may be increased even after execution of the sentence has begun. (See *People* v. *Serrato, supra,* 9 Cal.3d 753, 763; e.g., *In re Ricky H., supra,* 30 Cal.3d 176, 191 [trial court imposed three-year median term instead of mandatory four-year upper term for the offense of aggravated assault]; *Wilson* v. *Superior Court, supra,* 108 Cal.App.3d 816, 818-819 [trial court improperly granted conduct credits; after time for filing appeal had expired, prosecution successfully moved to have the order set aside].)

court is without authority to correct such error even if the sentence has not yet been entered in the minutes of the court. (*People* v. *Thomas, supra,* 52 Cal.2d at p. 534.)

In both *McAllister* and *Thomas,* "the jurisdictional problem, as limited by the facts, is that of the trial court's power, after rendition of judgment, to change a valid sentence so as to *increase* the punishment." (*People* v. *Thomas, supra,* 52 Cal.2d 521, 529, fns. omitted, italics added.) We warned in *People* v. *Thomas* that "[l]iteral application of the McAllister rule would forbid mitigation of punishment in circumstances where mitigation is otherwise proper. [Citations.]" (*Id.* at p. 529, fn. 5.)

In the present case, the trial court sought to provide just such mitigation —in effect, to reexercise its discretion to mitigate the punishment as it was statutorily authorized to do in the first instance. ■■ Therefore, we must decide to what extent the rule described in *McAllister,* and subsequently invoked even in cases where the trial court did not seek to increase the sentence, properly has application in the circumstance where no increase in the sentence is intended.

## IV

Although, for the reasons explained above, a valid sentence may not be *increased* after formal entry in the minutes,[16] we decline to endorse or perpetuate the notion that a rule precluding alteration of a sentence after entry in the minutes applies even in a case in which, as here, the trial court seeks to exercise its judicial discretion to *mitigate* the defendant's prison sentence prior to commencement of execution of (or restraint by) that sentence.

We adopt this position for several reasons. First, the objective of obtaining finality in legal proceedings is just as well served by concluding that common law jurisdiction to mitigate a prison sentence expires upon commencement of execution of the sentence, as it would be served by concluding that jurisdiction is retained by the trial court only until the clerk of the

---

[16]Nothing we say here would authorize such an increase in the sentence after formal entry in the minutes. Various authorities indicate that double jeopardy concerns would be implicated were the trial court to attempt to increase the sentence after its formal entry in the minutes. (Cal. Const., art. I, § 15; *In re Candelario, supra,* 3 Cal.3d 702, 705-707; *People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1025-1026 [184 Cal.Rptr. 483]; *People* v. *Drake* (1981) 123 Cal.App.3d 59, 63-64 [176 Cal.Rptr. 186]; Annot., Power of State Court, During Same Term, to Increase Severity of Lawful Sentence—Modern Status (1983) 26 A.L.R.4th 905-944.)

court enters the judgment in the minutes of the court. Retention of the rule of finality as of the time of entry in the minutes is unnecessary in this situation, because the trial court's jurisdiction will have expired as soon as custody of the defendant has been transferred from the judicial officer to the executive officer.[17]

Second, to apply the minute-entry rule to determine whether jurisdiction remains in the trial court would have the inequitable effect of making jurisdiction depend upon whether—and how promptly—the clerk of the court performed his or her ministerial duties. For example, the failure of the clerk of the court to enter the judgment in the minutes would permit a defendant to seek modification of the sentence, whereas regular entry of the judgment in the minutes would deprive the court of jurisdiction to modify the judgment even though the court had not yet relinquished custody of the defendant to the executive officer.

Third, application of a rule equating loss of jurisdiction to modify a sentence with entry of the judgment in the minutes of the court is inconsistent with the modern statutory sentencing scheme, under which the Legislature explicitly has granted trial courts jurisdiction to mitigate a state prison sentence *even after* execution of a sentence has commenced. Pursuant to section 1170, subdivision (d),[18] once a defendant has been committed to the Department of Corrections, the trial court has, within 120 days of the first day of commitment, the authority on its own motion to recall the sentence and resentence the defendant "for any reason rationally related to lawful sentencing" (*Dix* v. *Superior Court, supra,* 53 Cal.3d 442, 456; see, *id.* at p. 460), "provided the new sentence . . . is no greater than the initial sentence." (§ 1170, subd. (d).) ■ This section creates a statutory exception to the common law rule that the trial court loses jurisdiction to resentence a

---

[17]With respect to the need for finality, retention of the minute-entry rule is appropriate in cases in which the original sentence consists of a fine only (e.g., *People* v. *McAllister, supra,* 15 Cal.2d 519, 520-521, 524; *In re Garrity, supra,* 97 Cal.App. 372, 375) and thus some act is required to fix the point of expiration of the trial court's jurisdiction to modify the sentence.

[18]That subdivision provides in relevant part: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."

defendant upon commencement of execution of his or her sentence. (*Id.* at p. 455; see *Holder* v. *Superior Court, supra,* 1 Cal.3d 779, 783.)[19]

The *McAllister* rule was enunciated a number of years prior to the enactment of section 1170, subdivision (d)'s statutory predecessor, which was added in 1963 to the former Indeterminate Sentence Law (§ 1168) and provided that, upon sentence and commitment, the court was authorized to recall the commitment and release the defendant on probation under supervision pursuant to section 1203. (See Historical Note, 50B West's Ann. Pen. Code (1985 ed.) § 1168, p. 729.) In 1967, this statute was amended to permit a court also to recall the commitment in order to resentence the defendant to prison. (*Ibid.*; see *Holder* v. *Superior Court, supra,* 1 Cal.3d 777, 780-781, fn. 1.) In 1969, the Legislature limited the time period during which the court could recall the commitment on its own motion, and resentence the defendant, to 120 days from the first day of commitment. (*Ibid.*)

As a practical matter, to require a trial judge (who desires to resentence a defendant whose sentence has been stayed) to delay resentencing until the actual commencement of the defendant's prison term generally would entail a considerable waste of time and expense. The Legislature, although limiting the resentencing provisions of section 1170, subdivision (d), to the postcommitment situation, has not otherwise imposed any such requirement, and we likewise decline to do so. ■ Thus, we conclude that where the sentence is to a term of imprisonment, the trial court retains jurisdiction, during the period a stay is in effect and at any time prior to execution of the sentence, to reconsider the sentence and vacate it or impose any new sentence which is not greater than the initial sentence, just as it may do so on its own motion pursuant to section 1170, subdivision (d), within 120 days after the court has committed the defendant to the prison authorities.

In light of our conclusion that the trial court did not lose jurisdiction to modify its sentence prior to execution of the judgment against defendant,

[19]Although section 1170, subdivision (d), affords the trial court the authority to modify the sentence *only after commitment* of a defendant and thus does not apply literally to defendant's case, the statute demonstrates a legislative policy favoring reexercise of judicial discretion to mitigate a term of incarceration in appropriate cases.

The district attorney asserts that even if section 1170, subdivision (d), literally applies to precommitment modification, or even if the legislative intent it embodies properly may be invoked to justify the trial court's action in the present case, defendant's ineligibility for probation nevertheless would preclude application of that statute. Pursuant to section 1170, subdivision (d), however, the sentencing court is given the power to recall and resentence the defendant "for any reason rationally related to lawful sentencing" (*Dix* v. *Superior Court, supra,* 53 Cal.3d 442, 456) and is not limited to recalling and resentencing only in cases where a defendant is eligible for probation. A resentencing under this statute may involve, of course, a sentence to state prison for a term equal to or less than that imposed under the initial sentence, whether or not the defendant is eligible for probation.

and thus could strike (as permitted by the law *then* applicable) the additional punishment which the court initially had imposed for defendant's personal use of a firearm, we need not and do not decide whether the Court of Appeal erred in declining to waive the requirement that defendant serve that additional punishment, as he urges in reliance upon our decision in *People* v. *Tanner, supra,* 24 Cal.3d 514, 521-522.

V

The judgment of the Court of Appeal, reversing the trial court's judgment entered on June 15, 1990, is reversed, and the matter is remanded to the Court of Appeal with directions to reinstate the judgment incorporating the modified sentence imposed by the trial court on June 15, 1990.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.