Filed 2/10/25  P. v. Aguayo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081059 |
| v. | (Super. Ct. No. FSB026475) |
| GABRIEL AGUAYO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. David Mazurek, Judge.  Dismissed.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Natalia A. Cortina, Melissa Mandel, and Evan Stele Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant Gabriel Aguayo appeals from the trial court's postjudgment order declining to dismiss his prior serious felony conviction and firearm enhancements pursuant to Penal Code[1] sections 1171.1 and 1385. On appeal, defendant contends the trial court's decision to reimpose the firearm and prior serious felony enhancements was irrational because he was serving a life term and parole regulations protected against the risk of injury or danger to the public. We will dismiss the appeal for lack of jurisdiction.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 9, 2000, at approximately 2:00 p.m., Arthur Beers was sitting on Alvin Denmon's front porch. Defendant approached Beers and asked him what he was doing there. Beers said that he was waiting for Denmon to return home. Defendant left for a moment and returned with a rifle. He pointed the rifle at Beers and demanded his identification. Beers gave defendant his wallet.

---

[1] All future statutory references are to the Penal Code.

[2] A summary of the factual background is taken from this court's nonpublished opinion in defendant's direct appeal, case No. E030343. (*People v. Aguayo* (Aug. 23, 2002, E030343) [nonpub. opn.] (*Aguayo I*).) We take judicial notice of our prior nonpublished opinion from defendant's direct appeal.

2

Defendant put the wallet in his pocket and asked Beers whether he had any other identification. Beers said no. Beers asked defendant to return his wallet, and defendant told Beers that he could get the wallet from Denmon later.

As defendant began walking away from Beers, he fired one rifle shot into the air, startling Beers. Defendant then walked around the corner of Denmon's house. At this point, Beers left and called the police. Later that afternoon, Beers identified defendant in a curbside lineup as the person who took his wallet and fired the rifle.

In the meantime, Denmon returned home. He saw a man, whom he later identified as defendant, walking down his driveway carrying two large bags. He went to the back of his house, found the back door ajar, and noticed that a back window had been forced open. Inside his house he found several power tools and a car polisher missing. He called 911 and went outside to look for defendant.

Denmon saw defendant walking down the street and began chasing him. Defendant ran behind a house. There, he dropped the bags, a cap and a jacket he had been wearing. He then walked back to the street carrying the rifle. He pointed the rifle at Denmon and told him to back away. Denmon started backing away and defendant walked across the street. The police thereafter arrived.

The police found four wallets on defendant's person, including Beers's wallet, and an expended .22-caliber round and one live round in defendant's pocket. Behind a nearby house, the police found two pillowcases that contained the tools taken from Denmon's house, and defendant's cap and jacket. They found defendant's wallet, a drug

3

scale, and two .22-caliber bullets in the jacket. They found defendant's rifle in some nearby bushes. The rifle was in two pieces, but it was operational.

Defendant was arrested and transported to jail. On the way there, he stashed a kit containing syringes and other items used to ingest heroin under the patrol car's front seat. He admitted to the police that the kit was his and that he left it in the patrol car. He also admitted going to Denmon's house and taking Beers's wallet. He also admitted that he was carrying a loaded rifle when he confronted Beers but denied pointing it at Beers or firing it at any time. He further denied pointing the rifle at Denmon or intending to steal anything from Beers or Denmon.

On December 29, 2000, a jury found defendant guilty of one count of residential burglary (§ 459, count 2); two counts of assault with a firearm (§ 245, subd. (a)(2), counts 3 & 5); and one count of possession of a firearm by a felon (§ 12021, subd. (a), count 6).[3] In addition, the jury found true that defendant personally used a firearm (§ 12022.5, subd. (a)(1)) in the commission of the assaults. In a bifurcated bench trial, the trial court found true that defendant had suffered three prior serious or violent felony convictions (§§ 667, subds.(b)-(i), 1170.12, subds. (a)-(d)), two prior serious felony convictions (§ 667, subd. (a)(1)), and three prior prison terms (§ 667.5, subd. (b)).

---

[3] The jury found defendant not guilty of two counts of robbery (§ 211, counts 1 & 4). The jury also found not true the special allegations that in the commission of the robbery in count 1 and the residential burglary defendant had personally used a firearm, to wit, a rifle, and that in the commission of the robbery in count 4 defendant had personally and intentionally discharged a firearm, to wit, a rifle.

4

On September 11, 2001, after granting defendant's motion for a new trial on counts 2 and 3, and denying defendant's motion for a new trial on counts 5 and 6, the trial court sentenced defendant to a total term of 42 years to life in state prison under the Three Strikes law. Defendant's sentence consisted of the following: 25 years to life for the assault with a firearm conviction in count 5, plus 10 years for the personal firearm use finding attached to count 5; five years for one of the prior serious felony convictions, plus two one-year terms for two prior prison term findings. Sentence on count 6, possession of a firearm by a felon, was stayed pursuant to section 654. The trial court struck one of the prior serious felony convictions and one of the prior prison term findings. The trial court granted the People's motion to dismiss counts 2 and 3 in the interest of justice.

Defendant subsequently appealed to this court. Defendant's claims were rejected and the judgment was affirmed. (*Aguayo I*, *supra*, E030343.) Defendant later sought federal habeas relief. The federal district court denied defendant's request for relief. (*Aguayo v. Ollison* (C.D. Cal., Mar. 20, 2008, No. ED CV 07-607 RGK (SH)) 2008 U.S. Dist. Lexis 25373.) This court also twice affirmed the trial court's denials of petitions for relief pursuant to section 1170.126. (*People v. Aguayo* (Nov. 21, 2013, E058421) [nonpub. opn.]; *People v. Aguayo* (Apr. 11, 2019, E071754) [nonpub. opn.].)

On April 29, 2022, defendant's appointed counsel filed a petition for resentencing, asking the trial court to strike the prior prison term allegations pursuant to sections 1171.1 and 1172.75. On June 14, 2022, the court granted the petition, struck the prison

priors, and resentenced defendant to a total term of 40 years to life: an indeterminate term of 25 years to life on count 5, plus a determinate term of 15 years.

On August 5, 2022, defendant's appointed counsel filed another petition to recall and for resentencing pursuant to section 1171.1. On August 18, 2022, an amended abstract of judgment was filed which deleted any reference to the prior prison terms.

On October 28, 2022, defendant's appointed counsel filed a petition to recall his sentence pursuant to section 1171.1. He argued that recent amendments to section 1385 gave the trial court discretion to dismiss the prior strike enhancements, the prior serious felony enhancement, and the firearm use enhancement. Defendant maintained there were several factors weighing greatly in favor of dismissal: his aggregate sentence exceeds the 20-year limit, his prior conviction was more than five years old, his prior strike offenses were remote, and the dismissal of the enhancements would not pose a serious danger to public safety. In support of his argument that he would not pose a serious danger to others, defendant argued that he had strong ties with family and friends that would support him upon his release. He submitted letters that his mother, sisters and others had written to the Board of Parole stating that they will support defendant and provide him with a home when he is released.

The People filed an opposition, questioning whether the trial court had jurisdiction to hear defendant's request for a full resentencing hearing. The People noted that the full resentencing hearing should have been requested on June 14, 2022, at the time the trial court had struck the prior prison terms. The People also noted that there is no statutory

6

procedure for a defendant to request a resentencing hearing, that the California Department of Corrections and Rehabilitation (CDCR) identifies defendants eligible for relief and the court verifies eligibility, and that a defendant has no right to make a motion to strike a prior conviction under section 1385. The People further argued the trial court should not dismiss the enhancements. The People noted that the presumptions listed in section 1385 do not apply to prior strike convictions because they are not enhancements, and that dismissal of either the serious felony prior or the gun enhancement was not in furtherance of justice. In a supplemental brief, the People asserted that if defendant presents a risk to public safety, the mitigating factors in section 1385, subdivision (c) need not be considered.

A full resentencing hearing on defendant's petition was held on April 7, 2023, and the court allowed defense counsel to reopen argument on resentencing as defendant was not present and his appearance was not waived at the June 14, 2022 hearing. The parties initially addressed whether the trial court had jurisdiction to hear the matter. The trial court noted that "this case originally came before the Court on a petition filed by the public defender's office under what is now [section] 1172.75 to strike the two prior prison terms under [section] 667.5(b), the two one-year enhancements. [¶] The Court was not originally asked to address -- do any consideration of the other enhancements, the other resentencing provisions that are now allowed under [section] 1172.75. So I don't know what the mechanism or how the Court's going to describe it. But I think what happened -- and also in addition to the petition that was filed by the public defender's

7

office, [defendant] had filed some paperwork previously that did indicate he would like his entire sentence to be reviewed, which falls within the ambit of that Penal Code section, at least as to the enhancements." The court further explained, "So at the time the Court originally ruled on it, I don't believe I had reviewed the defendant's additional paperwork. I was operating under the fact -- under the assumption that the public defender had had that and had taken that into consideration. I think, at the time, the statute was relatively new and we were all dealing with issues related to that, and I think it was an oversight or omission by counsel and the Court. And it was something we should have addressed at the time but didn't. [¶] And so I'm not sure the mechanism I would do that, but I would go back to the June 14th hearing and basically allow the defense – I'll consider reopening of whatever evidence or arguments they wanted to present with respect to that."

Defense counsel thereafter argued that defendant had been in custody for 22 years, had been rehabilitated, had taken courses while incarcerated, and requested defendant be released that day. Counsel noted that defendant had family support, a job from his mother in construction, and a residence. Counsel further asserted that his sentence exceeds the 20-year limit noted in Senate Bill No. 81 and that defendant would not pose a danger to public safety as he had changed his ways through the programs he had attended. The prosecutor responded that the amendments to section 1385 did not apply to prior strike offenses, noting defendant had already brought a motion to dismiss his prior strike convictions at his original sentencing. The prosecutor also pointed out that

8

defendant's certificates of completion in various programs did not "rise to the level that would support dismissing any furtherance justice," as most of the courses were for a few days and there was no evidence relating to anger management or mental health treatment. The prosecutor further stated that defendant failed to provide his prison record to show he had been rehabilitated, that it was unknown whether defendant had a "clean record" while in custody, and that defendant posed a danger to public safety.

The trial court denied defendant's request to strike his enhancements in the furtherance of justice pursuant to section 1385, subdivision (c). The court noted that it did not have jurisdiction to consider defendant's motion to strike his prior strike convictions and that even if it did, it would not strike defendant's prior strikes based on his criminal record, his character, the nature of his crimes, and his prospects for the future. As to defendant's requests to strike his prior serious felony conviction and firearm enhancement, the court explained: "So that brings us to the firearm enhancement and the [section] 667(a) nickel enhancement. The Court does feel under [section] 1385(a)(2) it does have the ability to address the issue as to whether or not those enhancements ought to be stricken. And the Court is aware of the factors that are supposed to carry great weight. But even in light of those factors, it's not necessarily conclusive if some of those factors are present that the defendant shall be granted the relief requested. The Court still has to balance those factors against the aggravating factors that are present as well as the threat to public safety in the event those enhancements are dismissed. [¶] So first of all, the Court does believe that there would

9

be a threat to public safety if the defendant—if the enhancements were stricken and the defendant were to be released. Again, the Court will cite the defendant's record. First-degree burglaries are particularly dangerous because they involve the invasion of a person's home and it is fraught with the possibility of confrontation between a resident victim and the burglar. [¶] There is the 2800, fleeing a police officer, which not only puts the police officer in danger, but the community as well. There are other multiple convictions, but also the current offense for which the defendant is incarcerated, which included assaulting people with firearms and actually discharging a weapon in the air in a residential neighborhood which puts the entire neighborhood at risk. As what goes up must come down, somewhere. [¶] So for those reasons, the defendant has demonstrated that he has been a continuous danger to the community when he is out in the community. So the Court would deny it on that basis. [¶] As well as, the Court still believes that the aggravating factors in the case do outweigh the statutory factors that the Court must consider. Again, the Court cited the current circumstances of the crime. Among the other aggravating factors are the crime involved of threat of great bodily harm. The defendant used a weapon. There was planning, sophistication, and professionalism involved. The defendant's prior convictions are numerous and of increasing seriousness. As well as the defendant's prior performance on probation and parole were unsatisfactory."

Defendant then addressed the court, noting his actions were due to the victims selling drugs to his family but he realized he should not have taken the law into his own

10

hands and that it was wrong. When the court asked whether he was "up for parole" or had any parole hearings, defendant replied, "Yes. I got denied," because of the Three Strikes law.

The court thereafter stated: "So, again, like I said, all I can do is go upon the record that I have before me. And based upon that record, I would not change the sentence that was imposed based upon the facts that I know. [¶] So it's not -- I don't take any enjoyment out of doing it. I don't have any pleasure. The Court has a job to do, not only in considering you individually, but part of my responsibility is to protect the public as well. And the Court takes the job of protecting the public very seriously, and I think at this point that's where I am. [¶] So I don't think we need to do anything with the sentence. The Court will just affirm the sentence that it imposed on June 14th of last year." Defendant thereafter timely appealed.

III.

DISCUSSION

Defendant contends the trial court abused its discretion in denying his request to dismiss the firearm and prior serious felony enhancements because he was serving a life sentence and parole regulations protected against risk of danger to public safety. Although not raised by either party, we address the issue of whether the trial court had jurisdiction to hear the petition pursuant to section 1171.1, now section 1172.75.

When defendant was convicted and sentenced, defendants were subject to a one-year prison term enhancement for each true finding on allegations they had served a prior

11

prison term and had thereafter remained free from custody for at least five years. (Former § 667.5, subd. (b).) Effective January 1, 2020, as enacted pursuant to Senate Bill No. 136, section 667.5, subdivision (b) was amended to limit prior prison term enhancements to prior terms imposed for sexually violent offenses "as defined in subdivision (b) of [s]ection 6600 of the Welfare and Institutions Code." (Stats. 2019, ch. 590, § 1; *People v. Escobedo* (2023) 95 Cal.App.5th 440, 445 (*Escobedo*); see *People v. Burgess* (2022) 86 Cal.App.5th 375, 380 (*Burgess*).)

The Legislature subsequently enacted Senate Bill No. 483, which sought to make the changes effected by Senate Bill No. 136 retroactive. (Stats. 2021, ch. 728, § 1; *Escobedo*, *supra*, 95 Cal.App.5th at p. 445.) This bill went into effect on January 1, 2022, and added former section 1171.1 (now § 1172.75) to the Penal Code. (*Escobedo*, *supra*, at p. 445.) Section 1172.75 provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1172.75, subd. (a).)

The statute also establishes a mechanism to provide affected defendants a remedy for those legally invalid enhancements. (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.) Subdivision (b) of section 1172.75 directs CDCR and the correctional administrator of each county to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and . . . provide the name of each person, along with the person's date of birth and the relevant case number

12

or docket number, to the sentencing court that imposed the enhancement." (§ 1172.75, subd. (b).) "This information shall be provided as follows: [¶] (1) By March 1, 2022, for individuals who have served their base term and any other enhancements and are currently serving a sentence based on the enhancement. For purposes of this paragraph, all other enhancements shall be considered to have been served first. [¶] (2) By July 1, 2022, for all other individuals." (§ 1172.75, subd. (b)(1)-(2).) Hence, section 1172.75 does not authorize defendants or their counsels to file a petition or a motion to strike the unauthorized enhancement. (*Escobedo*, *supra*, 95 Cal.App.5th at p. 445.) "'[A] "freestanding motion [or petition] challenging an incarcerated defendant's sentence is not a proper procedural mechanism to seek relief."'" (*Id*. at p. 448.)

Senate Bill No. 483 provides a process for recall of sentences rendered invalid by Senate Bill No. 483 and resentencing of affected defendants. (§ 1172.75, subd. (c).) After the trial court receives from the CDCR and county correctional administrator the information included in subdivision (b) of the statute, "the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a)," and if so, "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) Section 1172.75, subdivision (c) also provides a staggered timeline for when the review and resentencing of eligible defendants shall be completed: By October 1, 2022, for individuals who have served their base term and any other enhancements and are currently serving a sentence based on the enhancement (§

13

1172.75, subd. (c)(1)), and by December 31, 2023, for all other individuals. (§ 1172.75, subd. (c)(2).)

Further, "[r]esentencing pursuant to [section 1172.75] shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court find by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) The court is to apply the current sentencing law, including all the recent ameliorative legislation. (§ 1172.75, subd. (d)(2).) The court may consider "postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated" and any circumstances which "have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

Section 1172.75, subdivision (d)(5) provides that the trial court shall appoint counsel and subdivision (e) provides that the parties may waive a resentencing hearing. If the hearing is not waived, it may be conducted remotely through remote technology if the defendant agrees.

In this case, defendant's counsel filed a motion or petition pursuant to section 1172.75 in June 2022 and October 2023, stating defendant was subject to prison prior enhancements and entitled to a new full sentencing proceeding under section 1172.75.

14

In *Burgess*, *supra*, 86 Cal.App.5th 375, the court held that section 1172.75 "simply does not contemplate resentencing relief initiated by any individual defendant's petition or motion." (*Burgess*, *supra*, at p. 384.) Rather, "any review and verification by the court in advance of resentencing is only triggered by receipt of the necessary information from the CDCR Secretary or a county correctional administrator, not by any individual defendant." (*Ibid*.) As such, *Burgess* held that the trial court "lacked jurisdiction to adjudicate [the defendant's] motion for resentencing . . . ." (*Id*. at p. 382, citing *People v. King* (2022) 77 Cal.App.5th 629, 634.)

Other courts have taken the same view as *Burgess*. (See., e.g., *People v. Cota* (2023) 97 Cal.App.5th 318, 332 ["We begin by acknowledging that section 1172.75 does not authorize a defendant to seek resentencing on his or her own motion or petition. Rather the process is triggered by the [CDCR] identifying a defendant as a person serving a sentence that includes a prior prison term enhancement."]; *Escobedo*, *supra*, 95 Cal.App.5th at pp. 447-448 [same]; *People v. Newell* (2023) 93 Cal.App.5th 265, 268 ["'[S]ection 1172.75 simply does not contemplate resentencing relief initiated by any individual defendant's petition or motion'"].)

Here, the record does not indicate whether the CDCR identified defendant as potentially eligible for resentencing under section 1172.75 in June 2022 when the trial court first struck defendant's prior prison terms. However, by the time defendant filed his second petition under section 1172.75 in October 2023, defendant's abstract of judgment had been amended and excluded any prior prison term enhancements. Thus, by

15

October 2023, the CDCR would not have identified defendant as eligible for resentencing under section 1172.75, and defendant or his counsel could not have initiated the process for resentencing at that time. This is not authorized under section 1172.75. (See *Burgess*, *supra*, 86 Cal.App.5th at p. 384; *People v. Cota*, *supra*, 97 Cal.App.5th at p. 332; *Escobedo*, *supra*, 95 Cal.App.5th at pp. 447-448.)

Therefore, the trial court lacked fundamental jurisdiction and had no authority to adjudicate defendant's motion for resentencing under section 1172.75 or reopen the resentencing hearing in October 2023. (See *Burgess*, *supra*, 86 Cal.App.5th at p. 382; see also *People v. Ford* (2015) 61 Cal.4th 282, 286 ["A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case."].)

"Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced." (*People v. Karaman* (1992) 4 Cal.4th 335, 344.) Here, execution of defendant's sentence commenced decades ago. Thus, under the common law, the trial court had no jurisdiction to resentence defendant in 2023. And, if the trial court lacked jurisdiction to resentence defendant, then an order denying resentencing "'is nonappealable, and any appeal from such an order must be dismissed.'" (*People v. King*, *supra*, 77 Cal.App.5th at p. 634; see also *People v. Fuimaono* (2019) 32 Cal.App.5th 132, 135 [trial court lacked jurisdiction to modify the defendant's sentence; therefore, order denying motion to modify was not appealable].)

16

Based on the foregoing, we find the trial court lacked jurisdiction to consider defendant's request for recall and resentencing pursuant to section 1172.75. Because the trial court lacked jurisdiction to consider defendant's request, the court's denial of the request could not have affected his substantial rights. (*People v. Chlad* (1992) 6 Cal.App.4th 1719, 1725-1726.) Accordingly, the order denying defendant's request for recall and resentencing is not an appealable order, and the appeal must be dismissed. (*Id.* at p. 1725; see also *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1085 ["'A trial court order denying relief that the court has no jurisdiction to grant does not affect a defendant's substantial rights and is therefore not appealable under section 1237, subdivision (b).'"].) Given our conclusion that defendant's appeal must be dismissed for lack of jurisdiction, we deem it unnecessary to consider his contentions.

IV.

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

17