Filed 9/14/16  P. v. Xenakis CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTINA MARIE XENAKIS,<br><br>    Defendant and Appellant. | F070829<br><br>(Super. Ct. No. BF157030A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Alison E. Kaylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

Christina Marie Xenakis was convicted of two counts of burglary and two counts of misdemeanor possession of stolen property.  Appellate counsel failed to identify any

---

[*]Before Kane, Acting P.J., Detjen, J., and Smith, J.

arguable issues from the record.  After a thorough review of the record, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

The amended information charged Xenakis with three counts of first-degree burglary (Pen. Code, §§ 459, 460, subd. (a)),[1] and two counts of misdemeanor receiving stolen property (§ 496, subd. (a)).  Each of the felony counts in the amended information also charged Xenakis with having served four prior prison terms within the meaning of section 667.5, subdivision (b).

Ronald Gray was sitting in his home working on his computer when he noticed a man and a woman walk past his window.  It was early in the morning, so the appearance of the two caused him to be suspicious.  He watched them walk across a neighbor's driveway and toward a third neighbor's garage.  He went outside and saw the man ride by on a bicycle; the woman walked toward him carrying a chainsaw.  When Gray told the woman to stop, she ran away.  Gray entered his pickup and saw a minivan in which the woman was sitting.  He pulled in front of the van.  The woman backed the van up and drove away.  Gray followed, but lost sight of the minivan.  A short while later he found the minivan in the roadway turned over on its side.  When Gray approached the van, he found there was no one inside.  Gray identified Xenakis as the woman he saw carrying the chain saw and running from his neighbor's house.  Gray also authenticated a photographic lineup in which he identified Xenakis as the woman he saw on the date of the incident.

Terry Edward Twombly testified that he lived near Gray, who told Twombly on the morning in question that he had been robbed (hereafter the Twombly burglary).  Twombly confirmed that a chain saw and a bicycle were taken from his garage.  He testified the garage was attached to his house, but there was not a door from the house

---

[1]All statutory references are to the Penal Code unless otherwise stated.

into the garage. Twombly found the bicycle not far from his house a short while later. After retrieving the bicycle, Twombly went to the area where the van had crashed. He looked inside the van and saw his chain saw.

Mitzie Twombly, Terry Twombly's wife, recounted hearing from Gray on the morning in question. She confirmed both garage doors were closed the night before the robbery, but the side door may have been unlocked. She encountered Xenakis behind her house shortly after the burglary. Xenakis did not admit anything, instead stating she was trying to escape from an abusive boyfriend.

On that same morning, Mary Cormack discovered her purse had been taken from her house (hereafter the Cormack burglary). Her driver's license and credit cards were inside the purse when it was taken. She was uncertain if her check book was inside the purse. Cormack and her husband live about three houses from the Twombly house.

On the day preceding the above-mentioned burglaries, Suchen Whitworth, who owns a nearby lodge, noticed that someone had stolen her phone and a set of keys to the lodge that were both on or in the check-in desk (hereafter the Whitworth theft).

Chris Tran was in the area camping with friends on the weekend when the above events occurred (hereafter the Tran burglary). On Saturday of that weekend, the group left the campground to spend time at a nearby river. When they returned, the campsite was ransacked and numerous items were stolen from inside the tents. Tran's duffle bag was stolen, which contained all of his clothes and personal items.

Jessica Nguyen was camping with Tran, and confirmed his testimony about the events of that day. The property stolen from her included a purse. Inside the purse were her wallet with her driver's license and one credit card.

Ian Dang was also camping with the group and confirmed the events of that day. His backpack was stolen. Inside his backpack were his cellular phone, wallet, and his clothes.

Kern County Deputy Sheriff Charles Shinn was working on the morning of the Twombly burglary. He was dispatched to the Twombly residence and proceeded to the scene where the minivan had overturned. When the van was turned upright, Shinn discovered inside a chain saw that was ultimately identified as belonging to Twombly and a black pouch. Inside the pouch Shinn discovered several phones and keys, including Dang's phone; Whitworth's phone and lodge key; Cormack's keys, driver's license, credit card and check book; and Nguyen's driver's license and credit card.

Shinn prepared the photo lineup shown to Gray and Mitzie Twombly in which each identified Xenakis as the individual they had seen that day. Shinn also discovered two different sets of shoe prints in the dirt near the Twombly residence. He also discovered these same shoe prints at the Cormack residence. Later that day, Shinn located similar shoe prints near the trailer in which Xenakis lived.

Shinn thereafter interviewed Xenakis. She admitted taking the Twombly's items from their garage along with another person. She also admitted having the items in the pouch in her possession and admitted she knew they were stolen. She admitted being at the campsite and taking some items, but denied entering a tent to do so. She denied stealing the items from the Cormack residence, but inferred she may have been with the person who committed the theft. A redacted version of the interview was played for the jury. This version of the interview was consistent with Shinn's summary presented to the jury.

The information charged Xenakis with three counts of first-degree burglary. The first count related to the Tran burglary. The jury found Xenakis guilty of burglary but determined it was a burglary in the second degree. The second count related to the Twombly burglary. The jury found Xenakis guilty of burglary, and determined it was a burglary in the first degree. The third count related to the Cormack burglary. This burglary count was pled in conjunction with the fourth count, misdemeanor possession of stolen property. The jury found Xenakis not guilty of burglary, but found her guilty of

4.

possession of stolen property. The fifth count related to the Whitworth theft, and the jury found Xenakis guilty of misdemeanor possession of stolen property.

Xenakis waived her right to a jury trial on the charged enhancements. The trial court found each of the enhancements true.

The trial court sentenced Xenakis to the aggravated term of six years for the Twombly burglary count, enhanced by one year for a prior prison-term allegation.[2] A consecutive term of eight months was imposed for the Tran burglary count. A concurrent sentence was imposed for the possession of stolen property counts. Xenakis's total prison sentence was seven years eight months.

## *DISCUSSION*

Xenakis's appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 asserting she could not identify any arguable issues in this case. After a thorough review of the record, we agree. The facts establishing Xenakis's guilt were overwhelming, including her own admissions when interviewed by the police. For the most part, the parties agreed on jury instructions. There were no serious evidentiary disputes, no objections during closing arguments, and the jury returned verdicts as favorable to Xenakis as one might expect in these circumstances. The sentence was well within the trial court's discretion.

We note that Xenakis made two motions for replacement of her appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. We have reviewed the transcripts from these hearings and conclude the trial court properly denied the motions.

---

[2]Prior to the sentencing hearing, Xenakis successfully moved to have three of her prior convictions, for which she served sentences, reduced to misdemeanors pursuant to Proposition 47. Because of the unsettled state of the law, the trial court concluded it would be improper to treat the prison terms served for these convictions as enhancements pursuant to section 667.5, subdivision (b).

5.

By letter dated September 15, 2015, we invited Xenakis to inform us of any issues she would like us to address. Xenakis responded to our letter raising several issues. First, she asserts both burglary convictions were found by the jury to be in the second degree. Xenakis is mistaken. The record establishes the jury found the Twombly burglary was a first-degree burglary.

Xenakis also asserts she mistakenly waived her right to be sentenced by the jury. Once again, she is mistaken. She waived her right to have the jury determine if the enhancements were true, not for the jury to impose sentence. The trial court, not the jury, imposes the sentence once the jury finds a defendant guilty. (*People v. Hartsell* (1973) 34 Cal.App.3d 8, 13 [pronouncement of judgment is judicial act], disapproved on other grounds in *People v. Karaman* (1992) 4 Cal.4th 335, 348.)

Next, Xenakis asserts the trial court erroneously imposed the aggravated term. We have reviewed her probation report and concur with the trial court that the circumstances in aggravation justified imposition of the aggravated term. The trial court noted the following circumstances in aggravation: (1) Xenakis's prior convictions as an adult and her sustained juvenile petitions were numerous; (2) she was on a grant of misdemeanor probation when the crime occurred; and (3) her prior performance on probation was unsatisfactory as she continued to reoffend. No circumstances in mitigation were found. The trial court acted well within its discretion when it chose the aggravated term.

Finally, Xenakis asked if a letter she submitted to the trial court had been entered into her record. She provided a copy with her letter to this court. The letter was marked as "Court's Exhibit [No.] 1." It was provided to the court by Xenakis during Shinn's testimony. The letter was authored by another inmate and alleges that Deputy Shinn stopped the inmate for a traffic violation several years before. Shinn apparently offered to ignore any Vehicle Code violations if the inmate performed sexual favors for Shinn. The letter also asserts the author knew of three other women who were treated similarly by Shinn.

6.

Defense counsel concluded the letter was not relevant to the proceedings for several reasons. First, the testimony against Xenakis came from numerous sources, not from Shinn. As defense counsel noted, Shinn merely collected evidence. Second, there were apparently two Deputy Shinns with the Kern County Sheriff's Office, and the letter failed to provide any identifying information to distinguish between the two. Third, the Deputy Shinn who testified had been employed with the Kern County Sheriff's Office for fewer than three years, and the letter asserted the incident involving the inmate occurred four or five years before the trial. The prosecutor confirmed that Deputy Shinn was not living in Kern County four or five years ago and had been a peace officer for fewer than three years.

No error occurred. The letter was not relevant and quite possibly referred to someone other than the deputy who testified at trial. We also note the letter sent to this court by Xenakis, which appears to be a rewritten letter by the same inmate, asserts the Shinn incident occurred two to three years before the appeal, not four to five years before the trial. It would appear, therefore, that the inmate or Xenakis changed the dates to coincide with the time period Shinn was employed by the Kern County Sheriff's Office. This discrepancy suggests the letter was fabricated. Finally, even if we assume the letter was tangentially relevant to the issues in this case, which it was not, and the trial court erred in failing to admit it, which it didn't, we would conclude the error was not prejudicial. As defense counsel noted, Shinn's primary role in this case was to collect evidence, not to act as a percipient witness. Moreover, the evidence against Xenakis was overwhelming, especially since she confessed to each of the crimes of which she was convicted. In this case, any possible error would be harmless under any standard of review.

## *DISPOSITION*

The judgment is affirmed.

7.