Filed 12/29/20  P. v. Benavidez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL GREGORY BENAVIDEZ,<br><br>    Defendant and Appellant. | B299027<br><br>(Los Angeles County Super. Ct. Nos. VA147076, VA148319) |

APPEAL from judgments of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed in part, dismissed in part.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In Los Angeles Superior Court No. VA147076 (the 076 matter), a jury convicted Michael Gregory Benavidez of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), and unlawful possession of ammunition (Pen. Code, § 30305, subd. (a)(1)) in March 2019.[1]  In April 2019 in Los Angeles Superior Court No. VA148319 (the 319 matter), Benavidez pleaded no contest to making criminal threats (§ 422, subd. (a)).  Benavidez admitted that he had one prior serious felony conviction (§§ 667, subd. (d), 1170.12, subd. (b)), and that he had served one prior prison term (§ 667.5, subd. (b)).  Although Benavidez had a maximum combined exposure in the two cases of more than 24 years, the People and Benavidez agreed to an aggregate sentence of 10 years and four months for both cases.  The trial court sentenced Benavidez consistent with the parties' agreement.

Benavidez raises contentions here related to both cases.

Benavidez contends there is insufficient evidence to support his convictions in the 076 matter because no evidence exists that he was knowingly in possession of the handgun and ammunition found in the garage where he was living.  We disagree and will affirm the trial court's judgment in the 076 matter.

_____

[1] Further unspecified statutory references are to the Penal Code.

2

Regarding his sentence in the 319 matter, Benavidez contends that Senate Bill No. 136 requires us to strike the one year enhancement imposed under section 667.5, subdivision (b) based on Benavidez's prior prison term.  Because Benavidez did not appeal from the trial court's judgment in the 319 matter, we do not reach Benavidez's contentions, but rather dismiss the appeal insofar as it relates to the 319 matter.

## BACKGROUND

### A. The 076 Matter—Methamphetamine, Firearms, and Ammunition

The Los Angeles County Sheriff's Department executed a search warrant on the garage of a duplex in Hawaiian Gardens at about 5:00 a.m. on February 21, 2018.  Deputies escorted Benavidez and his girlfriend from the garage and eight other people from the duplex, which was separate from the garage.  Benavidez had methamphetamine in his pocket when he was escorted from the garage.

The garage the deputies searched had a makeshift bed, clothing, and two televisions, some video equipment and a gaming system in it, and appeared as though it was being used as a residence.[2]  Deputies also found a backpack that contained more methamphetamine.  During their search of the garage, one of the deputies climbed onto a chair "exactly where it was in the room" and found, positioned on a rafter "about seven feet, eight feet off the ground," a .9 millimeter firearm loaded with live unfired ammunition and with a live unfired round in the

---

[2] During an interview with deputies after his arrest, Benavidez stated that he had been living in the garage for approximately one to two weeks.

3

firearm's chamber. The deputy testified that as he stood on the chair "exactly where it was in the room, the [firearm] handle was closest to [him]. So if [he] were to reach up, [the firearm] was perfectly within arm's reach." The deputy testified that if he stood on the chair and turned 180 degrees away from the firearm, "there was a plastic baggie" on another rafter that contained unfired ammunition.

Both the firearm and the ammunition were "in plain sight" as the deputy stood on the chair. The deputy testified that if one were *not* standing on the chair, the firearm and ammunition on top of the rafters would "more than likely not" have been visible.

When interviewed, Benavidez acknowledged that the methamphetamine in his pocket was his and "that he uses meth." Benavidez initially denied that the firearm and methamphetamine found inside the garage were his. When asked if they belonged to his girlfriend, however, he replied that "they didn't belong to her, not to mess with her, that it belonged to him."

### B. The 319 Matter—Criminal Threats

On July 4, 2018, Benavidez threatened to kill someone visiting a neighboring apartment. During the interaction, Benavidez raised his shirt to reveal a firearm in his waistband.

### C. Procedural Background

On March 12, 2019, a jury convicted Benavidez of one count of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)), one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)), and one count of unlawful possession of ammunition (§ 30305, subd. (a)(1)). For purposes of the 076 matter, Benavidez admitted that he had suffered a one-year prior conviction for purposes of section 667.5,

4

subdivision (b), and had a prior serious felony conviction for purposes of section 667, subdivision (d). On April 26, 2019, Benavidez pleaded no contest in the 319 matter to a single count of making criminal threats under section 422, subdivision (a). Benavidez admitted again—for purposes of the 319 matter, that he had suffered a prior serious felony conviction under section 667, subdivision (d) and a one-year prior conviction for purposes of section 667, subdivision (b).

At the sentencing hearing, the trial court noted that the parties had agreed to an aggregate sentence for Benavidez on both cases of 10 years and four months. Sentence was imposed as follows: "As to case number VA147076, defendant having been convicted of multiple counts . . . the defendant agreed to a disposition posttrial on that case which was four years on count number 1, which is the principal count. That term is doubled pursuant to [section] 1170(a) through (d), [section] 667 (b) through (i) for eight years. [¶] Count number 3 on VA148319 that is a [section] 422(a), that is a subordinate count, one third the mid of the [section] 422(a) is eight months. That term is ordered doubled pursuant to [section] 1170(a) through (d), 667(b) through (i). In addition and consecutive thereto, the defendant having admitted to one of the [section] 667.5(b) priors, the total term of imprisonment adds a one-year enhancement for—one-year enhancement for a total on case VA148319 of two years, four months." The trial court continued: "As to count number 2 on VA147076 the court will sentence the defendant to an additional 16 months which is to run concurrent. Count number 3 on VA147076 the court will likewise sentence to an additional 16 months to run concurrent."

5

Benavidez filed a timely notice of appeal as to the 076 matter, but no notice of appeal as to the 319 matter.

## DISCUSSION

### 1. The 076 Matter

Benavidez contends that the evidence presented at trial was insufficient to support a conclusion that he had knowledge of or control over the firearm and ammunition deputies found in the garage where Benavidez was living on February 21, 2018. Benavidez explains (and the People do not dispute) that each of the crimes for which he was convicted in the 076 matter requires that the defendant have knowledge of, possession of, control over, or intent to possess the hidden firearm or ammunition. (See *People v. Bay* (2019) 40 Cal.App.5th 126, 131-132 (*Bay*).) Benavidez argues, however, that the only evidence in the record that he had knowledge of, possession of, control over, or intent to possess the firearm and ammunition found in his living space was his confession to deputies after his arrest. Benavidez argues that under the corpus delicti rule, the People cannot rely exclusively on his confession to establish Benavidez's knowledge, possession, control, or intent.

When an appellant challenges the sufficiency of the evidence to support a criminal conviction, "we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Nevertheless, "California, like

6

most American jurisdictions . . . adhere[s] to the rule that . . . the . . . body of the crime[ ] cannot be proved by *exclusive* reliance on the defendant's extrajudicial statements." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1165 (*Alvarez*).) "Thus, . . . the corpus delicti rule requires that a conviction be supported by some evidence, which need only constitute ' "a slight or prima facie showing" ' [citation], but must be in addition to and beyond the defendant's untested inculpatory extrajudicial statements [citation], that '*someone* committed a crime.' [Citation.]" (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1428, original italics.) "The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Alvarez*, at p. 1171.)

"The firearm-and ammunition-possession offenses prohibit a felon from 'possess[ing]' or having 'under custody or control' the given item . . . and they are general-intent crimes that require knowing possession of the prohibited item. [Citations.] Possession may be actual or constructive. ' "A defendant has actual possession when the weapon is in his [or her] immediate possession or control," ' i.e., when he or she is actually holding or touching it. [Citations.] 'To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person.' [Citations.] Although a defendant may share possession with other people, 'mere proximity' or opportunity to access the contraband, 'standing alone, is not sufficient evidence of possession.' " (*Bay, supra*, 40 Cal.App.5th at pp. 131-132.)

The "necessary quantum of independent evidence" to satisfy the corpus delicti rule (*Alvarez, supra*, 27 Cal.4th at p.

7

1171) is present here.  A deputy stood on a chair "exactly where it was in the room" to access the firearm, which was loaded and had a round in the chamber.  The deputy testified that "if [he] were to reach up, [the firearm] was perfectly within arm's reach."  The jury could have inferred from that testimony that the garage's occupants knew about the weapon and had constructive control over it.  The position of the chair in the space coupled with the location of the loaded handgun and live ammunition supports a reasonable inference of more than mere proximity or opportunity.  Rather, the scenario allows the inference that the occupants of the garage placed the weapon, ammunition, *and* means of access where they did so that the weapon and ammunition could be readily accessed and used.  The evidence presented at trial is sufficient to sustain Benavidez's firearm- and ammunition-possession convictions.

## 2. The 319 Matter

Benavidez filed a notice of appeal in the 076 matter, but no notice of appeal in or referencing the 319 matter.

"Under statutory law, a defendant may generally take an appeal from a judgment of conviction."  (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094 (*Mendez*).)  "Under decisional law, by contrast, a defendant generally may *not* take an appeal from a judgment of conviction entered on a plea of guilty or . . . nolo contendere, except on grounds going to the legality of the proceedings, including the validity of his plea."  (*Ibid.*)

"A timely notice of appeal, as a general matter, is 'essential to appellate jurisdiction.' "  (*Mendez, supra*, 19 Cal.4th at p. 1094.)  "An untimely notice of appeal is 'wholly ineffectual:  The delay cannot be waived, it cannot be cured by nunc pro tunc

8

order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion.' " (*Ibid.*)

Citing *In re Benoit* (1973) 10 Cal.3d 72, Benavidez argues that his notice of appeal in the 076 matter constituted a constructive notice of appeal for the 319 matter. *Benoit* concerned two petitions on habeas corpus for (1) a defendant who repeatedly attempted to file a notice of appeal but "was thwarted by circumstances beyond his control" (Benoit), and (2) a defendant who asked appointed counsel to file a notice of appeal, but whose counsel failed to timely do so (Wyckoff). (*Id.* at p. 89.) The Supreme Court granted writ relief and deemed the late notices of appeal as having been timely constructively filed. *Benoit* was specifically about notices of appeal that had been *filed*, but were untimely. The matter did *not* deal with cases in which a defendant coincidentally had another matter pending at the same time as another matter in which a notice of appeal had been filed. *Benoit* has no application here.

As an alternative argument, Benavidez asks us to view the two matters as one for purposes of the notice of appeal. Benavidez argues that the 076 matter and the 319 matter "were consolidated for sentencing." "[T]here is one sentence and one judgment," Benavidez argues. And "[t]here can be no rational or tactical reason to file a Notice of Appeal in one case, but not the other."

We disagree with Benavidez's assertion. The record contains no order consolidating the matters for any purpose. There is a minute order transferring the 319 matter to the same department as the 076 matter "for global disposition." But the record does not demonstrate that the cases were ever consolidated or otherwise deemed related. Neither were they

9

substantively related. One case dealt with a set of drug, firearm, and ammunition charges based on a search of Benavidez's home on an early morning in February 2018. The other dealt with an unrelated criminal threat Benavidez made in July 2018.

There is not merely one judgment encompassing the two cases. "In a criminal case, the trial court's oral pronouncement of sentence constitutes the judgment." (*People v. Villatoro* (2020) 44 Cal.App.5th 365, 369, italics omitted; *People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) While the length of Benavidez's sentence was negotiated globally, the trial court treated the cases as separate matters when it entered judgment; the trial court carefully delineated case numbers, counts, and application of enhancements when it sentenced Benavidez in each of the matters. The trial court's preparation of a single abstract of judgment identifying the sentences imposed in both cases does not affect our analysis. (See *Karaman,* at p. 344 [abstract of judgment is the "commitment document . . . remanding the defendant to prison and ' "is the process and authority for carrying the judgment and sentence into effect" ' "]; *People v. Mesa* (1975) 14 Cal.3d 466, 471 [abstract of judgment is not the judgment of conviction].)

Moreover, one rational reason for failing to file a notice of appeal in the 319 matter is that the judgment was the result of a plea agreement, and appeal rights from judgments based on convictions after a plea agreement are limited. (See *Mendez*, *supra*, 19 Cal.4th at p. 1094.) Benavidez does not argue, and the record does not disclose, that any ground for appeal existed when judgment in the 319 matter was entered or when it became final 60 days later. The one point of error Benavidez argues here is

based on a statute—Senate Bill No. 136—that the Legislature did not pass until after the judgment in the 319 matter was final.

The trial court entered judgment in both the 076 and 319 matters on June 6, 2019, and Benavidez filed his notice of appeal in the 076 matter on the same day. Absent a notice of appeal, the 319 matter would have become final on August 5, 2019—60 days after the trial court entered judgment. (Cal. Rules of Court, rule 8.308(a); *People v. Smith* (2015) 234 Cal.App.4th 1460, 1465.) Senate Bill No. 136 was not signed into law until October 8, 2019, and did not become effective until January 1, 2020. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341.)

It is entirely reasonable and rational to not appeal a judgment that is not appealable. And that Senate Bill No. 136 was enacted while an appeal in an unrelated matter was pending does not render the notice of appeal in the unrelated matter effective as to the other.

We are without jurisdiction to hear Benavidez's challenge to his sentence in the 319 matter. We dismiss the appeal insofar as it relates to that matter.

11

## DISPOSITION

The judgment in Los Angeles Superior Court No. VA147076 is affirmed. The appeal is dismissed insofar as it relates to Los Angeles Superior Court No. VA148319.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.