Filed 2/18/22  P. v. Abella CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093844 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F04720) |
| v. | |
| FRANK ABELLA, | |
| Defendant and Appellant. | |

When he was 17 years old, defendant Frank Abella killed a mentally and physically disabled man as the victim sat outside a store sipping coffee.  (*People v. Abella* (Jan. 2, 2013, C066010) [nonpub. opn.] (*Abella*).)[1]  Defendant was tried as an adult; the jury found him guilty of murder, robbery, and torture.  (*Ibid.*)  The jury also found true that defendant had used a deadly weapon in connection with the murder and

---

[1]     We treated defendant's request for judicial notice of the record in this previous appeal as a motion to incorporate that record and granted it.

1

torture, and the murder occurred during the commission of the robbery. (*Ibid.*) The trial court sentenced defendant to life without the possibility of parole (LWOP) on the murder conviction and stayed the remaining sentences on the other offenses except for a one-year enhancement. (*Ibid.*)

We upheld defendant's convictions on appeal (*Abella*, *supra*, C066010) and our Supreme Court denied defendant's petition for review by order, as follows: "The petition for review is denied without prejudice to any relief to which defendant might be entitled after this court decides *People v. Gutierrez*, S206365 and *People v. Moffett*, S206771." This court issued a remittitur on April 15, 2013.

In 2014, our Supreme Court issued *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*), after consolidating the two cases under review (*id.* at p. 1361).

In 2015, defendant sought resentencing pursuant to *Gutierrez*. Following a series of continuances, defendant filed substantive briefing as to his *Gutierrez* request in 2020; he also simultaneously filed substantive briefing in support of a request to make a sufficient record of information relevant to a future youth offender parole hearing under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) and a request for a juvenile transfer hearing under Proposition No. 57 (approved Nov. 8, 2016) (Proposition 57). The trial court accepted defendant's *Franklin* evidence, but denied his remaining requests.

Defendant appeals. He argues the trial court erred in: (1) finding he was not entitled to a juvenile transfer hearing under Proposition 57; and (2) refusing to resentence him to a lesser sentence of 25 years to life. We agree defendant is entitled to a juvenile transfer hearing under Proposition 57 because the proposition applies retroactively to him. We further conclude the trial court erred when it resentenced defendant to LWOP because the trial court misunderstood the scope of its discretion regarding the consideration of postconviction rehabilitative efforts. We accordingly vacate defendant's LWOP sentence and reverse the trial court's order denying defendant's request for a juvenile transfer hearing under Proposition 57 with further directions.

2

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Crime And Original Proceedings*

We take this background from our nonpublished *Abella* opinion.

"During the early morning hours of June 7, 2008, defendant and [James] Washington were hanging out together at an apartment complex in Rancho Cordova where defendant's mother lived. At the time, Washington was dating defendant's sister, E.G., who was also present. Defendant was several weeks shy of his 18th birthday.

"At approximately 2:40 a.m., defendant and Washington walked to a nearby 7-Eleven store. The events that occurred thereafter were captured in large part on surveillance cameras mounted at the 7-Eleven and at an adjacent check-cashing store.

"At approximately 2:50 a.m., defendant and Washington left the 7-Eleven and approached 50-year-old William Deer, who was sitting on a curb outside the check-cashing store drinking coffee he had just purchased at the 7-Eleven. Deer was both mentally and physically [disabled] due to a motorcycle accident more than 20 years earlier.

"Earlier that evening, Deer's mother had dropped him off at a bus stop in Sacramento so he could visit friends in Rancho Cordova. At the time, Deer wore a fanny pack around his waist in which he carried various personal items, including a cell phone charger, a toothbrush, cigarettes, and money. He also carried with him a cell phone. Deer was wearing the fanny pack in the 7-Eleven approximately 30 minutes before he was approached by defendant and Washington.

"What transpired during defendant's initial encounter with Deer is not altogether clear. However, what is clear is that, at some point, defendant and Washington beat, kicked and stomped on Deer and then ran from the scene.

"Approximately 30 minutes later, Washington returned to the area with E.G. By that time, Washington had changed his shirt. They approached Deer, who was still lying

3

where defendant and Washington left him. E.G. could see that Deer was hurt but he was still alive. Washington and E.G. departed.

"Seven minutes later, defendant and Washington returned to where they had left Deer. Less than a minute later, they again ran from the scene.

"Defendant and Washington returned a third time approximately 30 minutes later, this time with a BB gun. They shot Deer 19 times in the face and abdomen and then fled the scene.

"Police were eventually dispatched to the 7-Eleven and found Deer still alive. They did not find a fanny pack or cell phone in the area; nor did they find any identification for the victim. Deer was taken to the hospital, where he later died. The cause of death was determined to be multiple blunt force head injuries plus multiple BB pellet injuries.

"Five days later, defendant and Washington were arrested. They were charged with murder, robbery and torture and were tried separately. Defendant was ultimately convicted and sentenced as previously indicated." (*Abella*, *supra*, C066010.)

Following the imposition of defendant's sentence, the United States Supreme Court issued *Miller*, in which it held a mandatory LWOP sentence for a minor who commits murder amounts to cruel and unusual punishment. (*Miller v. Alabama* (2012) 567 U.S. 460 [183 L.Ed.2d 407] (*Miller*).) In his appeal from the judgment, defendant argued in pertinent part that "because he was less than 18 years old at the time of the offense, and LWOP was the presumptive sentence for 16 to 18-year-olds under California law, the punishment violate[d] *Miller's* categorical prohibition against mandatory LWOP for minors." (*Abella*, *supra*, C066010.) We concluded "the sentence imposed d[id] not violate *Miller* or otherwise amount to cruel and unusual punishment" because the trial court "exercised its discretion to consider defendant's age and other characteristics, along with the circumstances of the crime, in deciding . . . to impose an LWOP sentence."

4

(*Ibid.*)  We explained:  "*Miller* requires nothing more.  Hence, to the extent the trial court erred in applying a presumption for LWOP, that error was harmless."  (*Ibid.*)

As explained *ante*, defendant appealed, and our Supreme Court denied his petition for review by order.

II

*Gutierrez*

In 2014, our Supreme Court issued *Gutierrez*, in which it held Penal Code[2] section 190.5, subdivision (b) "properly construed, confers discretion on a trial court to sentence a 16- or 17-year-old juvenile convicted of special[-]circumstance murder to life without parole or to 25 years to life, with no presumption in favor of life without parole."  (*Gutierrez*, *supra*, 58 Cal.4th at p. 1360.)  The court further held that *Miller* "requires a trial court, in exercising its sentencing discretion, to consider the 'distinctive attributes of youth' and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender."  (*Gutierrez*, at p. 1361.)  "Under *Miller*, a state may authorize its courts to impose life without parole on a juvenile homicide offender when the penalty is discretionary and when the sentencing court's discretion is properly exercised in accordance with *Miller*."  (*Id.* at p. 1379.)  As discussed *post*, one of the *Miller* factors is " 'the possibility of rehabilitation.' "  (*Gutierrez*, at p. 1389.)

III

*The Current Proceedings And Intervening Law*

In 2015, defendant filed a request for resentencing pursuant to *Gutierrez*.  The matter was continued.

---

**2**      All further section references are to the Penal Code unless otherwise specified.

In 2016, our Supreme Court issued *Franklin*, *supra*, 63 Cal.4th at page 261 and the electorate passed Proposition 57 (see *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 304 (*Lara*)).  In *Franklin*, a juvenile offender challenged the constitutionality of his 50-year-to-life sentences.  (*Franklin*, at p. 268.)  Our Supreme Court concluded his constitutional claim was mooted by sections 3051 and 4801, because "those statutes provide Franklin with the possibility of release after 25 years of imprisonment [citation] and require the Board of Parole Hearings (Board) to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' [citation]."  (*Franklin*, at p. 268.)  The court, however, remanded the case "so that the trial court may determine whether Franklin was afforded sufficient opportunity to make [a record of mitigating evidence tied to his youth] at sentencing" for his eventual parole hearing.  (*Id*. at p. 269.)

In Proposition 57, the electorate " 'amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors [for juvenile offenders].  Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' "  (*Lara*, *supra*, 4 Cal.5th at p. 305.)  "Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult."  (*Id*. at p. 303.)

In 2020, defendant filed substantive briefing in support of three requests for relief. He requested:  (1) to be resentenced to 25 years to life under *Gutierrez*; (2) a hearing to establish a record for a future youthful parole hearing under *Franklin*; and (3) a juvenile transfer hearing under Proposition 57.  The trial court accepted defendant's *Franklin* evidence, but denied his remaining requests.  Defendant appeals.

We recount the specifics as to the *Gutierrez* and Proposition 57 requests in the pertinent portions of the Discussion *post*. We do not recount the specifics as to the *Franklin* request because it is not at issue in this appeal.

DISCUSSION

I

*The Trial Court Abused Its Discretion During Resentencing*

Defendant asserts: (1) the trial court's order denying his request for resentencing was arbitrary and unreasonable because the court failed to consider his postincarceration rehabilitation before reimposing LWOP; and (2) the proper consideration of the remaining *Gutierrez* factors in conjunction with the evidence of his rehabilitation weighed in favor of imposing the lesser sentence. He further asserts that, if the matter is remanded for resentencing, this court can exercise its discretion to disqualify the sentencing judge.

The People assert the trial court did not err in reimposing the LWOP sentence because: (1) it did not apply a presumption in favor of LWOP; (2) to the extent defendant seeks to revive his Eighth Amendment claim to the original LWOP sentence, it is moot; and (3) the trial court did not abuse its discretion.

We conclude defendant was entitled to a resentencing hearing and the trial court misunderstood the scope of its discretion when it ruled on defendant's resentencing request. We thus reverse. We do not address the People's mootness argument because defendant is not asserting an Eighth Amendment claim. (See *People v. Ochoa* (2020) 53 Cal.App.5th 841, 850-851 [claim of error in imposing LWOP under section 190.5, subdivision (b), based on misapplication of youth-related mitigation factors not moot based on eligibility for a youth offender parole hearing during the 25th year of incarceration].) Finally, we decline defendant's request to disqualify the trial judge on remand under Code of Civil Procedure section 170.1, subdivision (c) given our disposition that the matter be transferred to the juvenile court to conduct a juvenile

transfer hearing in the first instance, as explained *post*. Defendant has an adequate remedy to seek disqualification of the trial judge under Code of Civil Procedure section 170.6, subdivision (a)(2) following reversal on appeal, should the juvenile court determine defendant is not a fit and proper subject to be dealt with under the juvenile court law and the matter is thereafter reassigned to the trial judge.

A

*Additional Factual Background*

Defendant argued he should be resentenced to 25 years to life because his social history and postconviction rehabilitative progress demonstrated he was not " 'the rare juvenile offender whose crime reflects irreparable corruption.' " (Bolding omitted.) Specifically, defendant relied on exhibits separately filed in support of his *Franklin* motion to illustrate his individual circumstances and postconviction rehabilitation.

The exhibits included evidence: (1) defendant was diagnosed with both physical and intellectual disabilities, including cerebral palsy and an extremely low IQ classification of 62; (2) during his 12 years in prison, defendant received his G.E.D. certificate, occupational training certificates, and completed multiple college courses, including political science, public speaking, and world religions; (3) defendant participated in various self-help programs addressing life skills, self-development, and addiction recovery, and twice completed 22 weeks of self-reconstruction therapy training and served as a mentor to other inmates in the program; (4) defendant completed a criminal and gang members anonymous workshop and wrote letters to at risk youths as part of the "Prison Letters 4 Our Struggling Youth" program; (5) defendant is committed to various philanthropic causes, bringing awareness to challenges facing at risk youths and men's health issues and had made donations to a Special Olympics team and fundraised for the Court Appointed Special Advocates of Tulare County.

In prison defendant was employed as a teacher's aide, barber, porter, and sewing machine operator. In January 2020, he was named "employee of the month" and was

8

recognized for his exemplary work ethic. Defendant also participated in the prisoners uniting people with puppies program as a K-9 handler, successfully training four rescue dogs. He received various commendations from his supervisors and correctional officers for his positive attitude and professionalism. Indeed, multiple correctional officers characterized defendant as a role model to other inmates because he follows all rules and procedures.

The People argued this court had already determined that the trial court had considered defendant's distinctive attributes of youth when originally sentencing him as required by *Miller*, and thus, the trial court had already done everything required by *Miller* and *Gutierrez*. The People urged the trial court to find the LWOP sentence was correctly imposed at the original sentencing hearing.

At the hearing, the trial court said any presumption of LWOP during the original sentencing was "harmless error on my part. That was actually an issue that was litigated in front of the Third District Court of Appeal in this remittitur, and the court found that notwithstanding my indication that there was a presumption that it was clear that this Court would not have sentenced Mr. Abella to 25 years to life, and in fact that is the case, I would not." "Let's assume for sake of argument we can go back in time and there is no presumption. So I have a choice. And I had a choice back then. I had a choice to sentence him to 25 years to life or LWOP. Even with the presumption, I had a choice. And I will just tell you that the presumption of LWOP in Mr. Abella's case did not affect this Court whatsoever because I do not think the facts and circumstances of Mr. Abella's case warranted 25 years to life. I think that life without the possibility of parole, based on everything I indicated at the time, is the appropriate sentence. But if you'd like to make an additional record, [defense counsel], I'll go ahead and allow you to do that."

Defense counsel argued that, while defendant's crime was heinous and certain information concerning his background had been considered at the original sentencing hearing, an extensive investigation had not been made into defendant's social history, and

9

successive investigation authorized by the court on remand reflected defendant was not irreparably corrupt. Defense counsel asserted the extensive information gathered concerning defendant's reformation demonstrated he had a capacity for change and had indeed changed for the better. Defense counsel asked the trial court to sentence defendant to 25 years to life and asserted the request for resentencing was not moot given defendant would be eligible for parole in his 25th year of incarceration because defendant was still subject to disadvantages associated with an LWOP sentence.

The People argued the evidence of defendant's postconviction rehabilitative efforts was irrelevant to the court's determination on the resentencing request, and, even considering an evaluation of the new sociological information from the period prior to the original sentencing, LWOP remained the appropriate sentence in the case given the aggravating circumstances.

The trial court noted that, prior to imposing defendant's original LWOP sentence, it was aware of defendant's "dreadful and horrible childhood" and defendant had presented and the court had considered information concerning his drug use, the poor parenting he received, and his problems in the foster care system. The court further noted defendant had inaccurately minimized his involvement in the crime and the court believed defendant's identified IQ of 62 was inconsistent with the court's observations of him during trial and at sentencing. In the trial court's mind, defendant had already had the equivalent of a *Miller* hearing.

Turning to the evidence of defendant's postconviction rehabilitation, the court commented: "Let's be honest, we expect people [who] are sent to prison to follow the rules. They are now in an environment where rules are the touchstone of morning, noon and night. We don't expect people [who] we sentence to prison to misbehave and cause problems. Are we surprised when they do? No. But I am also equally not surprised when somebody like Mr. Abella who has committed a heinous horrible crime that he would once incarcerated where there are rules that he must follow, I am not surprised that

10

he follows those rules.  I'm actually not.  So to me, it's not really a mitigating or aggravating factor as to what occurs once somebody is incarcerated.  You are expected to follow the rules.  [¶] . . . [¶]  So the fact that Mr. Abella has taken every opportunity that he's had to better himself, he should do that.  We expect him to do that.  We hope he does that.  So to me, that's not really a factor that changes what the crime was on the day it was committed and what he did and how he minimized it in front of the jury so that he wasn't completely truthful."  The trial court stood by its original sentence of LWOP, recognizing defendant would be eligible for a parole hearing during his 25th year of incarceration.

B

*Defendant Was Entitled To Resentencing*

We initially address whether defendant was entitled to a full resentencing hearing because it appears the trial court believed our previous appellate decision rendered resentencing unnecessary.  As explained *ante*, *Gutierrez* interpreted section 190.5 as authorizing imposition of either LWOP or 25 years to life without any preference and affirmed the *Miller* factors had to be considered prior to imposing an LWOP sentence on a juvenile offender.  (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1388-1390.)  Our Supreme Court remanded the matters even though the appellate courts had previously found the *Miller* error harmless (as here), explaining:  "To be clear, we do not fault the trial courts in these cases; they dutifully applied the law as it stood at the time.  But we conclude that neither court made its sentencing decision with awareness of the full scope of discretion conferred by section 190.5(b) or with the guidance set forth in *Miller* and this opinion for the proper exercise of its discretion."  (*Gutierrez*, at pp. 1390-1391.)

In this case, our Supreme Court denied defendant's prior petition for review "without prejudice to any relief to which defendant might be entitled" under *Gutierrez*.  Inasmuch as the parties do not dispute the procedural propriety of defendant's

11

resentencing request, the trial court had to conduct a resentencing hearing with the awareness of the full scope of its discretion, as explained in *Gutierrez*.

C

*The Trial Court Misunderstood The Scope Of Its Discretion*

As explained in *Gutierrez*, the factors articulated by the United States Supreme Court in *Miller* must be considered prior to imposing an LWOP sentence on a juvenile offender. (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1388-1390.) One of the *Miller* factors is the possibility of rehabilitation. (*Gutierrez*, at p. 1389.) The United States Supreme Court has stated that postconviction rehabilitative conduct is relevant "as an example of one kind of evidence that prisoners might use to demonstrate rehabilitation" under *Miller*. (*Montgomery v. Louisiana* (2016) 577 U.S. 190, 212-213 [193 L.Ed.2d 599, 622].)

The trial court's statements during the resentencing hearing surrounding defendant's postconviction rehabilitative efforts demonstrate the trial court misunderstood the scope of its discretion in that postconviction rehabilitative conduct is relevant to the *Miller* analysis. The trial court characterized defendant's postconviction rehabilitation efforts as merely following the rules, which is "not really a mitigating or aggravating factor." To the contrary, however, postconviction rehabilitative efforts are relevant to determining whether the juvenile offender has the possibility of rehabilitation. The trial court's adamant refusal to consider the evidence of defendant's postconviction rehabilitative conduct was accordingly an abuse of discretion.

II

*The Trial Court Erred In Finding Proposition 57 Does Not Apply Retroactively*

A

*Additional Factual Background*

Defendant argued he was entitled to relief under Proposition 57 because his resentencing request was pending before the trial court when Proposition 57 passed. The People argued defendant was not entitled to a juvenile transfer hearing because his

12

judgment was final in 2013, thereby precluding the retroactive application of Proposition 57 to his case.

The trial court ruled defendant's judgment was final on January 23, 2013. The trial court further noted that, even if the Legislature later amended Proposition 57 to make it fully retroactive, remand would still not be appropriate due to the aggravating factors found at defendant's original sentencing, including the horrific nature of the crime, the details of which the court recounted. The court added: "And so should a court in the future question this Court's judgment in why I would not have remanded this for a limited hearing as to this defendant's reason for being tried in adult court, I want to clear that the remittitur and the court's language therein is what I considered would have considered in denying Mr. Abella's limited remand." The court continued, that defendant had been weeks away from his 18th birthday when he committed the crime, the court stood by its original LWOP sentence, and given legislative changes, defendant would have a parole hearing in his 25th year of incarceration.

B

*A Juvenile Transfer Hearing Is Appropriate*

Proposition 57 provides a juvenile may be tried and sentenced as an adult only if a juvenile court judge transfers the matter to adult court following a transfer hearing at which it considered various factors. (*Lara*, *supra*, 4 Cal.5th at pp. 303, 305.) Under the rule of *In re Estrada* (1965) 63 Cal.2d 740, Proposition 57 applies retroactively, but only to those cases that are not yet final. (*Lara*, *supra*, Cal.5th at pp. 303-304.) Whether Proposition 57 applies to a juvenile convicted in adult court who later collaterally attacks a final conviction following resentencing is currently pending before the California Supreme Court following disagreement among and between the Courts of Appeal. (See *People v. Federico* (2020) 50 Cal.App.5th 318, review granted Aug. 26, 2020, S263082; *People v. Padilla* (2020) 50 Cal.App.5th 244 (*Padilla*), review granted Aug. 26, 2020, S263375.)

13

Defendant, relying on *Padilla*, reasons that because his resentencing request was pending when Proposition 57 passed, he is entitled to a transfer hearing. The People, while disagreeing with the framing of the issue in *Federico* urges, consistent with *Federico*, that we find defendant's sentence was final in 2013 for purposes of *Estrada* retroactivity.

*Padilla* involved a habeas petitioner who was convicted of a murder committed when he was 16 years old and sentenced to LWOP in 1999. (*Padilla*, *supra*, 50 Cal.App.5th at pp. 246-247.) After his conviction was final, Padilla filed a habeas petition asking to be resentenced under *Miller*. (*Padilla*, at p. 248.) The trial court granted the petition and resentenced him to LWOP. (*Ibid*.) The Court of Appeal reversed the trial court's decision and remanded for reconsideration in light of *Montgomery*. (*Padilla*, at p. 248.) Proposition 57 took effect while the matter was pending in the trial court on remand. (*Padilla*, at p. 248.) After the trial court reimposed LWOP, Padilla sought transfer to the juvenile court under Proposition 57. (*Padilla*, at p. 248.)

Relying on *People v. Jackson* (1967) 67 Cal.2d 96, the Court of Appeal held that "a collateral proceeding may reopen the finality of a sentence for retroactivity purposes, even while the conviction remains final." (*Padilla*, *supra*, 50 Cal.App.5th at p. 253.) It found the petitioner's sentence was no longer final as it had been vacated by the habeas court, and, even if all matters not encompassed by resentencing were still final like the finding of guilt in *Jackson*, Proposition 57 nonetheless applied to his resentencing because a juvenile court disposition would be more advantageous to the petitioner than sentencing him as an adult for the criminal offense. (*Padilla*, at pp. 253-254.) "Because Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, independent of the convictions, we conclude it applies retroactively to appellant's nonfinal sentence and requires that he receive a transfer hearing." (*Id*. at p. 255, fn. omitted.) The Court of Appeal found this was "consistent with our Supreme Court's

14

determination in *Lara* that the voters intended Proposition 57 ' "to extend as broadly as possible" ' (*Lara*, *supra*, 4 Cal.5th at p. 309), i.e., 'to every case to which it constitutionally could apply' (*Estrada*, *supra*, 63 Cal.2d at p. 745)." (*Padilla*, at p. 256.)

The defendant in *Federico* was convicted in 2008 of assault with a firearm with various enhancements and sentenced to a 20-year state prison term. (*People v. Federico*, *supra*, 50 Cal.App.5th at p. 322.) In September 2018, the Secretary of the Department of Corrections and Rehabilitation sent a letter to the trial court providing it with the authority to recall the sentence pursuant to section 1170, subdivision (d)(1) based on authority subsequent to his conviction that rendered the sentence unauthorized. (*Federico*, at p. 322.) The defendant responded with a motion agreeing his sentence was unauthorized and asking the trial court to remand the case to the juvenile court for proceedings under Proposition 57. (*Federico*, at p. 322.) The trial court found Proposition 57 inapplicable and resentenced defendant to a 17-year term. (*Federico*, at p. 323.) The decision was affirmed, with the appellate court finding *Lara* inapplicable because the defendant's conviction became final when the time to appeal from his original conviction and sentence had passed, long before Proposition 57 went into effect. (*Federico*, at pp. 321, 325.) The appellate court explained, "even if a trial court has authority to recall a sentence under section 1170, subdivision (d), it does not follow that the sentence is not a final judgment under *Estrada*." (*Federico*, at p. 326.) While, as it noted, section 1170, subdivision (d)(1) was an exception to the general rule that a court loses jurisdiction to resentence the defendant once the sentence begins, the appellate court concluded resentencing does not address reopening a judgment to apply recently enacted changes in the law. (*Federico*, at pp. 326-327.)

Published decisions following *Federico* and *Padilla* have found *Padilla* to be the better reasoned of the two decisions. (See, e.g., *People v. Hwang* (2021) 60 Cal.App.5th 358, 366-367, review granted Apr. 14, 2021, S267274; *People v. Lopez* (2020) 56 Cal.App.5th 835, 845, review granted Jan. 27, 2021, S265936.) We agree.

15

"In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.)  Here, our Supreme Court's order expressly reserved defendant's right to seek resentencing under *Gutierrez*. Defendant sought resentencing and the trial court reimposed LWOP after Proposition 57 had passed.  Proposition 57 thus applies retroactively to defendant's case.  We accordingly reverse the trial court's order and remand with directions to transfer defendant's case to the juvenile court for a juvenile transfer hearing.

## DISPOSITION

We vacate defendant's LWOP sentence and reverse the trial court's order denying defendant's request for a juvenile transfer hearing under Proposition 57.  The trial court is directed in the first instance to transfer this matter to the juvenile court to conduct a juvenile transfer hearing.  If the juvenile court finds it would not have transferred defendant to be tried as an adult, the juvenile court shall treat his convictions as juvenile adjudications and impose an appropriate disposition within its discretion.  If, on the other hand, the juvenile court determines defendant is not a fit and proper subject to be dealt with under the juvenile court law, then defendant's convictions are to be reinstated and the matter returned to the trial court to conduct a new resentencing hearing in accordance with *Gutierrez* and the guidance provided by this opinion.


      /s/_____
      Robie, Acting P. J.


We concur:


/s/_____
Mauro, J.


/s/_____
Duarte, J.

16