Filed 2/10/26  P. v. Sidebottom CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B343303 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA040087) |
| v. | |
| TOMMY SIDEBOTTOM, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Dismissed.

Jennifer Peabody and Olivia R. Meme, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, and Zee Rodriguez and Viet H. Nguyen, Deputy Attorneys General for Plaintiff and Respondent.

\* \* \* \* \* \*

Nearly two decades after a jury convicted Tommy Sidebottom (defendant) of murder, three attempted murders and other crimes, the California Department of Corrections and Rehabilitation (CDCR) sent the trial court a letter identifying what it believed to be clerical and other sentencing errors with defendant's sentence. The trial court eventually corrected one clerical error, but declined to correct the purported non-clerical error in his sentence. Defendant now appeals. We dismiss this appeal because the trial court lacked jurisdiction to correct defendant's sentence unless defendant invoked a viable procedural vehicle for doing so—and he has not.

## FACTS AND PROCEDURAL BACKGROUND[1]

### I. The Underlying Crimes

On September 10, 2000, Brandon Williamson, Sr. (Williamson), Williamson's son, and Clifton Smith, Sr. (Smith) were standing next to a parked car in which Smith's two children sat. Defendant pulled up to them, got out of his vehicle while holding a red bandana, said something about Culver City, and then opened fire on the group with a semiautomatic handgun. The bullets struck Williamson and Smith, and fatally injured Smith. Defendant then got back into his vehicle, and while driving shot at two other vehicles but missed their occupants. Defendant then pulled up alongside a man riding a bicycle, pointed his gun at him, and told him he was next.

---

1    We draw the relevant background facts from our prior unpublished opinion in this case. (*People v. Sidebottom* (Apr. 8, 2003, B155260) 2003 Cal.App.Unpub.LEXIS 3477 (*Sidebottom*).)

## II. Charges, Conviction, Sentence and Direct Appeal

In the operative pleading, the People charged defendant with (1) first degree murder (Pen. Code, § 187),[2] for Smith; (2) three counts of attempted murder (§§ 187, 664), for Williamson and the occupants of the two moving cars; (3) assault with a firearm (§ 245, subd. (b)), for the bicyclist; (4) two counts of shooting at an occupied vehicle (§ 246); and (5) dissuading a witness (§ 136.1, subd. (c)(1)), for threatening the bicyclist "you're dead, fucker" after the bicyclist testified at defendant's preliminary hearing. The People further alleged the special circumstance that defendant intentionally killed Smith while "an active participant in a criminal street gang" (§ 190.2, subd. (a)(22)), that all of the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and that defendant personally used or discharged a firearm for all but the dissuasion count (§ 12023.53).[3]

The jury convicted defendant of all the above-enumerated charged offenses and enhancements.

The trial court sentenced defendant to prison for life without the possibility of parole (LWOP), three consecutive life sentences, a consecutive 50-year-to-life sentence, and a consecutive 77 years and 8 months. The court calculated this sentence as follows:

---

[2]     All further statutory references are to the Penal Code unless otherwise indicated.

[3]     Defendant was also charged with the attempted murders of the two children in Smith's car, Williamson's son, and an additional passenger in one of the vehicles he shot at while fleeing, but the jury acquitted defendant of those charges.

-- *Murder.* For the murder conviction and special circumstance finding, the court imposed an LWOP sentence plus 25 years to life for the firearm enhancement, plus 10 years for the gang enhancement.

-- *Attempted murders.*

> -- For the attempted murder of Williamson, the court imposed a life sentence with the possibility of parole, plus 25 years to life for the firearm enhancement, plus 10 years for the gang enhancement.[4]

> -- For the attempted murder of the first vehicle's occupant, the court imposed a life sentence with the possibility of parole, plus 20 years for the firearm enhancement, plus 10 years for the gang enhancement.

> -- For the attempted murder of the second vehicle's occupant, the court imposed a life sentence with the possibility of parole, plus 10 years for the firearm enhancement, plus 10 years for the gang enhancement.

-- *Assault with a firearm.* For the assault with a firearm conviction, the court imposed two years (one-third of the midterm), plus 1 year and 4 months (one-third of the midterm)

---

[4] Our previous opinion states that the trial court imposed a total of 23 years, 4 months on the attempted murder convictions' gang enhancements, which is supported by the minute order from the sentencing hearing which indicates that the trial court imposed only 3 years, 4 months for the gang enhancement connected to the attempted murder of Williamson. (*Sidebottom*, *supra*, 2003 Cal.App.Unpub.LEXIS 3477, *3.) However, the sentencing hearing transcript and original abstract of judgment reveal the minute order to be incorrect, as the court imposed the full 10 years for each of the gang enhancements attached to each of the attempted murders.

4

for the firearm enhancement, plus 3 years and 4 months (one-third of the midterm) for the gang enhancement.

-- *Witness dissuasion.* For the dissuading a witness conviction, the court imposed one year (one-third of the midterm).

The court also imposed sentences on both of the shooting at an occupied vehicle counts, but stayed those sentences pursuant to section 654.

On direct appeal, we affirmed defendant's convictions but, consistent with section 186.22, subdivision (b)(5), ordered his sentences on the attempted murder counts modified to eliminate the consecutive 10-year sentences for the gang enhancements and to instead impose a 15-year minimum term on each life sentence. (*Sidebottom*, *supra*, 2003 Cal.App.Unpub.LEXIS 3477, *26.) On remand, the trial court entered an amended abstract of judgment reflecting these changes.

## III. CDCR's 2020 Letter

In October 2020, a case records analyst with the CDCR sent a letter to the trial court indicating her view that defendant's sentence "may be in error," and requesting that the court review its file to "determine if a correction is required." The letter identified what amount to two purported errors with the amended abstract of judgment or the sentence—namely, (1) that the abstract of judgment (erroneously) reflected that two of the attempted murder sentences had been stayed pursuant to section 654, and (2) that the trial court (erroneously) treated both fixed-term (that is, determinate) sentences (the sentences for assault with a firearm and witness dissuasion) as if they were subordinate sentences with correspondingly reduced sentences rather than treating one of them as a principal term with a full-

5

term sentence and the other as a subordinate sentence with a reduced sentence. (See Cal. Rules of Court, rule 4.451(a).)

## IV.    Trial Court's Ruling In Response to CDCR's Letter

In late 2024, the trial court acted on CDCR's letter. The court appointed counsel for defendant in August 2024 and held hearings in September and December 2024. Defendant urged the court to correct both errors identified by CDCR, and argued that correcting the non-clerical error would effectively require defendant to be resentenced, thereby rendering defendant's sentence non-final, such that defendant's gang enhancements would be subject to vacation under the recently enacted Assembly Bill 333 (2021-2022 Reg. Sess.) that redefined and narrowed the gang enhancement. The trial court declined to correct the non-clerical error identified by CDCR, reasoning that the net effect of fixing that error was to *lengthen* defendant's sentence (because one of the lesser subordinate sentences would have to be increased to a longer sentence for a principal offense), and that it would not otherwise be in the interests of justice to allow defendant's gang enhancements to be subject to vacatur.

## V.    Appeal

Defendant filed a timely notice of appeal from the court's order.

## VI.    Subsequent Correction of Clerical Error

While this appeal was pending, the trial court filed an amended abstract of judgment correcting the clerical error identified by CDCR, and thus unchecking the section 654 stay boxes for the two attempted murder counts.

## DISCUSSION

Defendant argues that (1) his sentence is unauthorized due to the non-clerical error the CDCR identified—namely, that the

6

court imposed two subordinate determinate sentences (rather than one principal determinate sentence and one subordinate determinate sentence), (2) the trial court was *obligated* to correct this authorized sentence by conducting a full resentencing, and (3) such a full resentencing renders his conviction non-final and thus entitles him to take advantage of all of the ameliorative changes in sentencing law that have happened over the last quarter century, including the change that narrows the applicability of the criminal street gang enhancement.  The People respond that the trial court lacked jurisdiction to correct the unauthorized sentence, and that we correspondingly lack jurisdiction to entertain this appeal.

The People are correct.

Once execution of a criminal sentence begins, the trial court that imposed that sentence generally lacks jurisdiction to modify or vacate that sentence.  (*People v. Howard* (1997) 16 Cal.4th 1081, 1089; *People v. Karaman* (1992) 4 Cal.4th 335, 344; see *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  There are some exceptions:  Trial courts retain the inherent power to correct clerical mistakes (that is, scrivener-type errors that do not involve the exercise of judgment) (*In re Candelario* (1970) 3 Cal.3d 702, 705; *Mitchell*, at p. 185), and courts may revisit a sentence pursuant to any statutory authority conferred upon them by our Legislature (*People v. Boyd* (2024) 103 Cal.App.5th 56, 69 (*Boyd*); e.g., §§ 1172.1, 1172.6).  But trial courts lack any inherent, free-floating jurisdiction to correct non-clerical errors in a sentence like the one defendant seeks through a full resentencing.  (See *People v. King* (2022) 77 Cal.App.5th 629, 633; *Boyd*, at p. 61; *People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1118, 1123; *People v. Singleton* (2025) 113 Cal.App.5th 783, 797-

7

798; *People v. Garcia* (2025) 114 Cal.App.5th 139, 144; but see *People v. Codinha* (2023) 92 Cal.App.5th 976 (*Codinha*).) Because the trial court lacked jurisdiction, we lack jurisdiction to entertain this appeal. (*King*, at p. 634; *People v. Chlad* (1992) 6 Cal.App.4th 1719, 1725.)

Defendant resists this conclusion, pointing to the decision in *Codinha*, *supra*, 92 Cal.App.5th 976, which extrapolates from the general principle that an "unauthorized sentence" is not subject to waiver a broader principle that trial courts possess an inherent, free-floating authority to correct an "unauthorized sentence" at any time—without any need to identify or invoke any legislatively authorized vehicle for doing so. (*Id.* at pp. 988-989.) *Codinha* so holds, but we side with the weight of authority rejecting *Codinha*: Its extrapolation of the "unauthorized sentence" doctrine is not compelled by precedent, and the net effect of *Codinha*'s rule is to render habeas corpus and section 1473.7 superfluous, as they already provide the statutory vehicles for revisiting unauthorized sentences while a sentence is being executed (or, in the case of section 1473.7, after it has been completed). (*Boyd, supra*, 103 Cal.App.5th at p. 68 [so noting].)

To be sure, we could construe defendant's appeal as a petition for a writ of habeas corpus addressed to us; indeed, defendant has asked us to do so. We nevertheless decline to do so. If a resentencing is warranted, it would require the court to decide which of the two determinant sentences should be the principal term, to select which base term (low, medium or high) is appropriate for the principal sentence, and to assess whether the trial evidence satisfies the more stringent definition of a

8

"criminal street gang" adopted by Assembly Bill 333; these are tasks better suited for the trial court in the first instance.

## DISPOSITION

The appeal is dismissed, without prejudice to defendant, the People, the trial court, or the CDCR seeking to correct defendant's sentence through a valid procedure.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)

The People v. Tommy Sidebottom
B343303


BAKER, J., Concurring


I have signed the opinion for the court, but the law on whether the unauthorized sentence rule confers jurisdiction to resentence a defendant is unsettled. There is a split in the Courts of Appeal. (Compare *People v. Boyd* (2024) 103 Cal.App.5th 56, 62; *People v. King* (2022) 77 Cal.App.5th 629, 633 with *People v. Codinha* (2023) 92 Cal.App.5th 976, 993.) There also appear to be conflicting observations in our Supreme Court's own case law. (Compare *In re G.C.* (2020) 8 Cal.5th 1119, 1129-1130 [unauthorized sentence rule is "an exception to the *waiver doctrine*" that cannot be invoked absent jurisdiction over the judgment] with *People v. Picklesimer* (2010) 48 Cal.4th 330, 338 ["Nor is Picklesimer's obligation to register part of an unauthorized sentence, which the trial court would have had *jurisdiction* to correct at any time"], italics added; *People v. Cunningham* (2001) 25 Cal.4th 926, 1044-1045 ["[I]t is settled that an unauthorized sentence is subject to correction despite the circumstance that an appeal is pending. Because the trial court was not authorized simply to waive sentencing on these counts, any error in failing to impose sentence in this regard *would have been subject to judicial correction when it ultimately came to the attention of the trial court or this court*"], italics added.)

In concurring in the judgment, I have resolved the ambiguity in precedent by deferring to the Supreme Court's most

recent pronouncement on the unauthorized sentence rule in *G.C.* But, to reiterate the *Codinha* court's observation, it would be better if the law in this area were clearer.  (*Codinha, supra,* 92 Cal.App.5th at 993.)

BAKER, J.